[Civ. No. 40991. First Dist., Div. Two. Dec. 18, 1978.]

In re the Marriage of DANA I. and DONALD S. KERN.
DANA I. KERN, Respondent, v.
DONALD S. KERN, Appellant.

## COUNSEL

Mason & Johnson and Charles R. Johnson for Appellant.

Meheen & Menken and John F. Menken for Respondent.

## OPINION

**KANE, J.**—This is an appeal from the trial court's order exercising jurisdiction in a child custody matter and modifying a prior custody decree. The pertinent facts leading to the dispute are virtually undisputed and may be stated as follows:

Appellant Donald S. Kern (Father) and respondent Dana I. Kern (Mother) who were married on January 28, 1967, are the parents of Donald B. Kern (Bart) and Bonnie M. Kern (Bonnie). On January 5, 1976, respondent filed a petition for legal separation. The parties thereafter entered into a marital settlement agreement, whereby the custody of Bonnie was given to Mother and the custody of Bart to Father. The custody agreement was incorporated in the "STIPULATED" interlocutory decree of dissolution filed on April 26, 1976, and the final judgment of dissolution entered on October 28, 1976.

In June 1976, appellant was released from the United States Navy, whereupon he and Bart moved to Rhode Island.

The record indicates that respondent was allowed to, and did in fact, exercise visitation rights with Bart. Thus, it appears that prior to his departure to Rhode Island, Bart spent one week with his mother and in October Mother visited him in Rhode Island. At Christmas time Bart returned to California to visit his mother. During this occasion respondent decided to convert her visitation right into permanent custody, and the instant court battle between the parties began.

On December 27, 1976, Mother obtained an ex parte order to show cause for a change in Bart's custody. In an effort to evade the court order, on January 4, 1977, the father removed Bart from an elementary school in Pacific Grove and returned him to Rhode Island. In reply, the next day the mother acquired another ex parte order to show cause, which required that Bart be present at the scheduled January 19, 1977, hearing. In the meanwhile the father brought a parallel action in Rhode Island petitioning for the custody of the child to himself and for a restraining order preventing the mother from removing Bart from Rhode Island. The hearing in the Rhode Island action was set for February 25, 1977.

At the January 19, 1977, hearing in the court below, the father appeared through counsel, who argued that the proper forum to determine Bart's custody was Rhode Island, the resident state of the child, his father and his relatives, and the place where the child's present and future interests lay. In accordance therewith, counsel for appellant moved the California court to transfer the case to Rhode Island or, in the alternative, to reserve jurisdiction and stay the action until upon introduction of all relevant evidence the proper forum authorized to decide the issue could be determined. At the same time counsel for respondent proceeded to adduce evidence in support of changing the existing custody decree. The mother testified that she had agreed to the award of Bart's custody to the father because at the time of the settlement agreement she had been unemployed, and that she had assumed that the child would not be removed from California. She also stated that in the interim she had remarried; was able to take care of both children; the father was unmarried, unemployed, and lived with his parents; that her new husband got along well with her children and that he was willing to assume the burden of their custody.

After receiving the foregoing evidence and hearing the legal arguments of the parties, the trial court denied appellant's motion to transfer the case to Rhode Island and held that the California court had jurisdiction in the matter. Simultaneously, in an order filed on January 24, 1977 (modifying order), the trial court changed the prior custody decree by awarding Bart's legal custody to Mother. The Rhode Island court, which conducted a parallel proceeding, reached a diametrically opposite result. It concluded that the prevailing consideration, the best interests of the minor, required that Bart remain with the father. In accordance therewith, the Rhode Island court awarded Bart's custody to appellant, and refused to give full faith and credit to the order of the court below.

Appellant's primary contention on appeal is that the trial court erred by failing to stay the proceedings until the most appropriate forum entitled to proceed in the matter was determined (*Ferreira* v. *Ferreira* (1973) 9 Cal.3d 824 [109 Cal.Rptr. 80, 512 P.2d 304]; Uniform Child Custody Jurisdiction Act, Civ. Code,[1] § 5150 et seq. (Uniform Act)). Additionally, it is argued that the modifying order is legally infirm and subject to reversal for the reason that it is not supported by sufficient evidence.

As a threshold matter, we point out that under the prevailing statute the California court had unquestionable jurisdiction to proceed in the matter. The Uniform Act provides in pertinent part that "A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if . . . (a) This state . . . (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state." (§ 5152, subd. (1).) The case at bench clearly falls within the cited statute. Bart left California on July 11, 1976, and the proceeding in this state was commenced on December 27, 1976. Since it is thus apparent that the child lived outside California less than six months, and the mother continued to live here, the jurisdiction of the court below is beyond any legitimate dispute. The real issue, therefore, is whether the court should have declined to exercise its jurisdiction and stayed the proceedings pending a determination of the most appropriate forum to adjudicate the controversy. We believe the case law requires a definite and unmistakable affirmative answer to this crucial question.

In *Ferreira* v. *Ferreira, supra,* 9 Cal.3d 824, the California Supreme Court was confronted with a situation strikingly similar to the case at bench. Stated in a nutshell, in *Ferreira* the parties obtained a divorce decree in an Idaho court, which awarded the custody of two minor children to the mother with reasonable visitation rights to the father. The mother remarried and moved with the children to Alabama; the father went to Delaware to complete his medical residency. While in Delaware both children visited the father, who, after the completion of his medical studies, left that state and settled together with the children in California. In California the father initiated several actions in order to modify the existing custody decree, mainly on the ground that if returned

---

[1] Unless otherwise indicated, all references will be made to the Civil Code of California.

to Alabama, the children would be mistreated by their stepfather. In countering these moves, the mother filed an action in Alabama seeking the exclusive custody of the children. The Alabama court granted the mother's petition and ordered that the father return the children to the mother's custody. The California court, in turn, awarded the temporary custody of the children to the resident father. In sum, while there are some differences in nuance, the basic facts in both *Ferreira* and the instant case are identical. The child whose custody rests with the nonresident parent visits the forum state. The resident parent then seizes the opportunity to change custody from the nonresident parent by bringing an action for modification of the custody order in the forum state. Thereupon the nonresident parent launches a counteraction in his or her own state. Each state decides the case in favor of its own resident, which generates not only jurisdiction competition between the sister states, but also creates the potential for conflicting decisions with respect to the lawful custody of the child.

In recognizing the almost insoluble dilemma[2] posed by forum shopping, conflicting adjudications and even child stealing, the Supreme Court concluded in *Ferreira* that in the factual setting here present, the "visitation state" should stay the proceedings to permit the final adjudication of the custody issue in the state of the nonresident parent; and even in case of compelling proof that the child's health and safety might be jeopardized if released to the nonresident parent having the custody right under an existing decree, the court in the "visitation state" may go no further than granting only temporary custody to the resident parent.

As expressed in *Ferreira*, "*the court of the forum should ordinarily refuse to reopen the question of the custody of a child whose custody is vested under an existing decree in a nonresident parent. If faced with charges* supported by competent proof, as distinguished from conclusory assertions by the party seeking modification of an existing decree, *that the return of the*

---

[2]The dilemma raised by the present situation was graphically described in *Ferreira* v. *Ferreira, supra,* 9 Cal.3d at page 829, in the following language: "The issue crystallizes in this prototypical situation: pursuant to court decree, a child, whose custody has been awarded to a parent residing outside the forum, spends his vacation with the resident parent, who then refuses to return the child on the ground that the child's welfare requires the award of custody to the resident parent despite the outstanding decree. *The court of ι΄e forum,* presented with this situation, *finds itself buffeted between the familiar rock of Scylla and the whirlpool of Charybdis. If the court,* to protect the best interests of the child, *reopens the custody question, it encourages parents to violate existing decrees in order to gain access to a more favorable forum; in effect, the court rewards a form of child stealing.* Yet if the court refuses to reopen the question, it risks rendering an order disconsonant with the best interests of the child." (Italics added.)

*child to the nonresident parent will jeopardize or seriously endanger the child's health or safety,* however, *the court should* inquire into these charges and *make* whatever *temporary custody order* it finds necessary to protect the child. *But even in cases in which the court grants temporary custody to the resident parent, it should not ordinarily resolve the merits of the controversy as to permanent custody;* it may, on motion of the nonresident or on its own motion, stay those proceedings to await the determination of that matter by the court of the nonresident parent's domicile." (P. 829, italics added.)

The position taken in *Ferreira* is supported by the conclusion reached in *Bergen* v. *Bergen* (3d Cir. 1971) 439 F.2d 1008, 1015, where the federal Court of Appeals underscored that "a parent with whom a child is visiting in another jurisdiction ordinarily should not be permitted, *except in clearly compelling circumstances,* to use the occasion to seek to divest the other parent of a judicially decreed right of custody. To permit this would place a premium on the abuse of the right of visitation and make it difficult for parties to agree on the free movement of the child from one parent to the other." (Italics added.)

In the instant case, Mother failed to show that Bart's health or safety would be jeopardized if returned to his father in Rhode Island. On the contrary, the record convincingly demonstrates that the father was able and willing to, and in fact did, provide a safe home and environment for the child trusted to his custody under an existing court decree. In light of this record and the legal precepts set out in *Ferreira,* the court below was not entitled to issue even a temporary order changing the custody of the child, much less a permanent one. We hold that, following the *Ferreira* mandate, the trial court should have refrained from exercising its jurisdiction and should have stayed the proceedings to permit the final adjudication of the custody issue in Rhode Island, the forum state of the nonresident parent.

Although the above discussion leaves no doubt that *Ferreira* is controlling in this case, respondent nevertheless insists that the governing authority is the Uniform Act, the application of which supports the conclusion reached by the trial court. We disagree.

While admittedly *Ferreira* was decided prior to the adoption of the Uniform Act, we entertain no doubt that the Uniform Act evinces the same concern and legal policy as expressed in *Ferreira,* and as a consequence the act verifies the continued validity of *Ferreira.*

To begin with, the new statute explicitly mentions the home state of the child as one of the important criteria in determining the proper forum (§ 5156, subd. (3)(a)). Secondly, and even more importantly, the avowed purpose of the Uniform Act is to "(a) *Avoid jurisdiction competition and conflict with courts of other states* in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being.

"(b) *Promote cooperation with the courts of other states* to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child.

"(c) *Assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection* and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state.

"(d) *Discourage continuing controversies* over child custody in the interest of greater stability of home environment and of secure family relationships for the child.

"(e) *Deter abductions and other unilateral removals of children undertaken to obtain custody awards.*

"(f) *Avoid relitigation of custody decisions of other states* in this state insofar as feasible.

"(g) *Facilitate the enforcement of custody decrees of other states.*

"(h) Promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child." (§ 5150, subd. (1); italics added.)

It is needless to emphasize that the aforestated statutory objectives are eminently served and promoted rather than hampered by the rule enunciated in *Ferreira.*

Lastly, the Uniform Act expressly authorizes the stay or dismissal of the proceeding by the forum state if another state is a more appropriate forum to decide the matter.[3]

We are, of course, well aware of the general proposition that whether the trial court stays the proceedings on the grounds of forum non conveniens is purely discretionary, and that the ruling of the trial court will not be disturbed on appeal unless there is a clear abuse of discretion (Code Civ. Proc., § 410.30; *National Life of Florida Corp.* v. *Superior Court* (1971) 21 Cal.App.3d 281 [98 Cal.Rptr. 435]; *Brown* v. *Newby* (1940) 39 Cal.App.2d 615 [103 P.2d 1018]). However, *Ferreira* teaches us that the court's discretion to deny a stay in an interstate custody case must be narrowly exercised in order to avoid encouragement of unlawful abduction and retention of children (*Ferreira* v. *Ferreira, supra,* 9 Cal.3d at p. 841; see also *Marlow* v. *Wene* (1966) 240 Cal.App.2d 670 [49 Cal.Rptr. 881]; *Allen* v. *Superior Court* (1961) 194 Cal.App.2d 720 [15 Cal.Rptr. 286]). When so viewed, the record at hand supports the position that the trial court's failure to stay the proceedings until the proper forum could be determined upon all relevant evidence constituted a prejudicial abuse of discretion.

■ Appellant's second major contention, that the modifying order is subject to reversal for the further reason that it is not supported by substantial evidence, is also well taken. As frequently emphasized, in a child custody determination the primary consideration is the best interest and welfare of the child, and the feelings and desires of the contending parties are not to be regarded except insofar as they affect the best interest of the child (§ 4600, subd. (a); *Taber* v. *Taber* (1930) 209 Cal. 755, 756-757 [290 P. 36]; *In re Marriage of Russo* (1971) 21 Cal.App.3d 72, 85 [98 Cal.Rptr. 501]; *Nadler* v. *Superior Court* (1967) 255 Cal.App.2d 523, 525 [63 Cal.Rptr. 352]). It is likewise settled that the best interest and the welfare of the child should be evaluated and determined in light of the fullest possible inquiry into the facts, circumstances and environment of the contesting parties (*Hicks* v. *Hicks* (1967) 249 Cal.App.2d 964, 967 [58 Cal.Rptr. 63]; *Faulkner* v. *Faulkner* (1957) 153 Cal.App.2d 751, 755-756 [315 P.2d 14]), and that in a proceeding to modify a custody order the burden is on the moving party to satisfy the court by substantial evidence

---

[3]Section 5156, subdivision (5), provides that "If the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum, it may dismiss the proceedings, or it may stay the proceedings upon condition that a custody proceeding be promptly commenced in another named state or upon any other conditions which may be just and proper, including the condition that a moving party stipulate his consent and submission to the jurisdiction of the other forum."

that the conditions have so changed as to justify the modification (*Prouty v. Prouty* (1940) 16 Cal.2d 190, 193 [105 P.2d 295]; *Ashwell* v. *Ashwell* (1955) 135 Cal.App.2d 211, 213 [286 P.2d 983]; *Sorrels* v. *Sorrels* (1951) 105 Cal.App.2d 465, 469 [234 P.2d 103]; *In re Marriage of Russo, supra,* 21 Cal.App.3d 72). While it is said that the trial court has broad discretion in awarding custody or in modifying a prior award, and the court's discretion will not be disturbed on appeal absent an abuse of discretion (*In re Randy B.* (1976) 62 Cal.App.3d 89, 97 [132 Cal.Rptr. 720]; *Hicks* v. *Hicks, supra,* 24 Cal.App.2d at p. 968), it is well recognized that the judge must exercise his discretion upon a consideration of evidence, and that the refusal of the trial court to consider *all the evidence* is tantamount to a failure to exercise discretion, and calls for reversal of the ensuing court order or decree (*Schlumpf* v. *Superior Court* (1978) 79 Cal.App.3d 892, 901 [145 Cal.Rptr. 190]; *Nadler* v. *Superior Court, supra,* 255 Cal.App.2d at p. 525; 6 Witkin, Summary of Cal. Law (8th ed. 1974) p. 4592 et seq.).

In the instant case the trial court did not make a finding that the change of the custody was in the best interests of Bart, and the evidence adduced by the mother likewise fails to bear out that proposition. All that was developed at the hearing was that the mother had acquired a new home since the issuance of the original decree; that she had remarried and was able to care for both children; that the father moved from California to Rhode Island; and that Bonnie desired to be with her brother. Even more to the point, the record discloses that despite appellant's insistence, the trial court refused to consider additional evidence which would have been made available by conducting an investigation into the present circumstances of the child in Rhode Island. Since it is thus clear that the custody change did not take place because of the best interest of Bart, and that the trial court did not consider *all* available evidence in making its determination, an abuse of discretion must be said to exist as a matter of law.

The order dated January 24, 1977, awarding custody of Bart to Mother is reversed. The cause is remanded to the trial court for further proceedings in accordance with the views herein expressed.

Taylor, P. J., and Rouse, J., concurred.