**Pamela Sue SZMYD (Boland), Petitioner,**

v.

**Gary Wayne SZMYD, Respondent.**

No. 5854.

Supreme Court of Alaska.

Feb. 26, 1982.

---

George F. Schaefer, Alan J. Hooper, Alaska Legal Services Corp., Fairbanks, for petitioner.

Gerard R. LaParle, Merdes, Schaible, Staley & DeLisio, Inc., Fairbanks, for respondent.

Before RABINOWITZ, C.J., and CONNOR, BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

CONNOR, Justice.

This petition raises the question of whether an Alaska superior court, which renders the original marriage dissolution decree, retains jurisdiction to modify custody when the non-custodial parent continues to reside in the state, but the custodial parent and the sole child have lived outside the state for the past two and one-half years. If there is jurisdiction, a corollary issue is whether the superior court erred in ruling that jurisdiction should not be declined on inconvenient forum grounds.

In our view, the court had jurisdiction but initially abused its discretion by failing to articulate its reasons for refusing to decline jurisdiction. Therefore, we remanded the case to the trial court for a statement of reasons for its refusal to dismiss. After reviewing that statement, we have concluded that the trial court should have dismissed or stayed the case on inconvenient forum grounds.

Pamela and Gary Szmyd ended their marriage on October 12, 1977. The dissolution decree, issued by a Fairbanks superior court, gave Pamela custody of Sean, the couple's one-year-old child. A year later, in the fall of 1978, Pamela and the child moved to Washington. They resided there for two years, then moved to California in early September of 1980.

On December 5, 1980, Gary filed a motion in Fairbanks for a modification of the custody decree. Pamela moved to dismiss for lack of jurisdiction or, alternatively, on the ground that Alaska was an inconvenient forum.[1] The superior court denied

---

1. The remaining issue raised in the petition is unimportant. Pamela asserts that Gary's failure to submit a sworn affidavit as part of his initial pleadings, containing the information specified in AS 25.30.080, requires reversal. AS 25.30.080 requires that a party, in his first pleading or an affidavit attached thereto,

   "declare under oath whether (1) he has participated, as a party, witness, or in any other capacity, in any other litigation concerning the custody of the same child in this or any other state; (2) he has information of any custody proceeding concerning the child pending in a court of this or any other state;

   and (3) he knows of any person not a party to the proceedings who has physical custody of the child or claims to have custody or visitation rights with respect to the child."

   The purpose of this section is to provide the court with sufficient information to determine jurisdiction, possible joinder of parties, and whether other jurisdictions need to be contacted under the various provisions of the act. Commissioners' Note to § 9 of the Uniform Child Custody Jurisdiction Act (UCCJA). As none of the statutory situations exist, the missing element is merely sworn negative averments, and the superior court properly rejected

her motion, and Pamela sought review. We stayed the superior court proceedings pending our review of the petition.

### A. Modification Jurisdiction

It has been said that decree-state courts retain a continuing jurisdiction to modify a custody decree.[2] *See Leighton v. Leighton*, 596 P.2d 8, 9 n.4 (Alaska 1979). The source of continuing, or modification, jurisdiction is Section 14 of the Uniform Child Custody Jurisdiction Act (UCCJA). Bodenheimer, [The Reporter for the Act], *supra* note 2, at 216.[3] That section confers a rather inverted jurisdiction: it prohibits a non-decree-state's exercise of jurisdiction except in limited circumstances.[4] Alaska's version of this section, codified at AS 25.30.130, differs only slightly from the uniform act.[5] The question arises, however, as to whether the jurisdictional prerequisites of the act must

be met in order for a decree-state to exercise merely *modification* jurisdiction.

Custody determinations can only be made in jurisdictionally sound proceedings. *See Layne v. Niles*, 632 P.2d 234 (Alaska 1981). In *Layne* we held that even though parents have reached an agreement concerning custody, when they are seeking a dissolution of their marriage under AS 09.55.231(a), a superior court cannot enter a custody order affecting the children unless the jurisdictional prerequisites of AS 25.30.020(a) are met. 632 P.2d at 236. We reasoned that such an order involved a "child custody determination" and was, therefore, subject to the requirements of the act.

■ Gary's request for a modification of custody similarly necessitates "a custody determination," AS 25.30.900(2); and the jurisdictional provisions of AS 25.30.020 expressly encompass all custody determina-

the argument that this error compelled dismissal on these facts.

**2.** Commentators disagree over whether this is an exclusive or concurrent jurisdiction. *Compare* Bodenheimer, Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction under the UCCJA, 14 Fam.L.Q. 203, 216–19 (1981) *with* Ratner, Procedural Due Process and Jurisdiction to Adjudicate: (a) Effective-Litigation Values vs. The Territorial Imperative; (b) The Uniform Child Custody Jurisdiction Act, 75 N.W.U.L.Rev. 363, 398–99 (1980) *and* Commissioners' Note to UCCJA § 14. There is agreement, however, that a strong preference in favor of decree-state jurisdiction exists, assuming one party continues to reside there. There is no "other jurisdiction" proceeding involved in this case, and thus it is unnecessary to resolve whether Alaska's continuing jurisdiction is exclusive or concurrent.

**3.** Professor Bodenheimer states:
"Modification jurisdiction ... is governed primarily by Section 14, reinforced, where necessary, by the stronger clean hands rule of Section 8(b). As the Commissioners' Note to Section 6 states, 'once a custody decree has been rendered in one state, jurisdiction is determined by Sections 8 and 14.' "
Bodenheimer, *supra* note 2, at 216.

**4.** Section 14 of the UCCJA states:
[Modification of Custody Decree of Another State]
"(a) If a court of another state has made a custody decree, a court of this State shall not modify that decree unless (1) it appears to the court of this State that the court which

rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this Act or has declined to assume jurisdiction to modify the decree and (2) the court of this State has jurisdiction.
(b) If a court of this State is authorized under subsection (a) and section 8 to modify a custody decree of another state it shall give due consideration to the transcript of the record and other documents of all previous proceedings submitted to it in accordance with section 22."

**5.** Alaska's differences are emphasized:
"(a) If a court of another state has made a custody decree, a *superior* court of this state *may not modify* that decree unless (1) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with *this chapter* or has declined to assume jurisdiction to modify the decree, and (2) the court of this state has jurisdiction.
(b) If a court of this state is authorized under (a) of this section and § *70 of this chapter* to modify a custody decree of another state, it shall *consider* the transcript of the record and other documents of all previous proceedings submitted to it in accordance with § *210 of this chapter*."
AS 25.30.130. In our view, the use of "may not modify ... unless ..." rather than "shall not modify ... unless ..." is not a critical distinction.

tions and modifications. The statute states, in part, that "[t]he superior court has jurisdiction to make a child custody determination by ... modification decree *if* the conditions set out in any of the following paragraphs are met ...." (emphasis added). AS 25.30.020(a). Any ambiguity as to whether AS 25.30.020 must be satisfied in order to exercise modification jurisdiction seemingly was clarified by the contemporaneous amendment of AS 09.55.205 (Judgments for Custody). To the extent relevant here, this statute was amended as follows in the same bill enacting Alaska's version of the UCCJA:

> "In an action for divorce or for legal separation the court may, *if it has jurisdiction under AS 25.30.020, and is an appropriate forum under AS 25.30.050 and 25.30.060,* during the pendency of the action, or at the final hearing or at any time thereafter during the minority of any child of the marriage, make, *modify or vacate* an order for the custody of or visitation with the minor child which may

seem necessary or proper [AND MAY AT ANY TIME MODIFY OR VACATE THE ORDER]."

Ch. 61, § 2, SLA 1977 (CSHB 208amS, at 15).[6] Given the prefatory language in AS 25.30.020, and the reference to that provision in AS 09.55.205, we conclude that the jurisdictional prerequisites of AS 25.30.020 apply when a superior court is asked to modify custody.[7] To the extent that *Leighton v. Leighton*, 596 P.2d 8 (Alaska 1979), which did not examine AS 09.55.205, is to the contrary, we hereby modify that holding.

■ We must next determine whether these prerequisites were met. Jurisdiction exists if any of the following requirements are met:

> "(1) this state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of

---

**6.** The statute was amended a second time in 1977, and the statutory version now reads, in part:

> "In an action for divorce or for legal separation the court may, if it has jurisdiction under AS 25.30.020, and is an appropriate forum under AS 25.30.050 and 25.30.060, during the pendency of the action, or at the final hearing or at any time thereafter during the minority of any child of the marriage, make an order for the custody of or visitation with the minor child which may seem necessary or proper and may at any time modify or vacate the order."

Ch. 63, § 1, SLA 1977 (FCCS CSHB 204). The jurisdictional reference remained the same.

**7.** This view is consistent with the uniform act. *See* Ratner, *supra* note 2, at 395:

> "Section 14(a) apparently narrows the scope of significant-connection, substantial-evidence, best-interest jurisdiction by confining modification jurisdiction to the initial-decree state *if it meets the prerequisites of the Act.*" (emphasis in original).

In our view, the UCCJA intended that continuing jurisdiction in the original state must rest on some significant connection with a party. *See* Commissioners' Note to UCCJA § 14. This is frequently easy to satisfy due to the "significant connection" basis for jurisdiction found in Section 3(a)(2) of the UCCJA. See note 8, *infra*. Alaska's version omits that basis

and thus even further narrows both initial and continuing jurisdiction.

This view is also consistent with the language of Section 14 of the UCCJA. That provision prohibits a non-decree state from exercising modification jurisdiction unless "the court which rendered the decree does not *now* have jurisdiction under jurisdictional prerequisites substantially in accordance with this Act...." (emphasis added). *See* AS 25.30.130. That modification jurisdiction cannot be exercised absent compliance with the jurisdictional prerequisites of Section 3 (AS 25.30.020) is also consistent with the uniform act's underlying purpose that the appropriate forum make custodial determinations, assuming that the "appropriate forum" is substantially defined by which state meets the jurisdictional prerequisites.

Our approach is further consistent with the late Professor Bodenheimer's view that the act was intended "to strengthen the continuing jurisdiction of the state of the initial decree...." Bodenheimer, *supra* note 2, at 214. Reading the provisions together, once there is a decree, one must look *first* to the issuing state to see if it continues to have modification jurisdiction, *i.e.*, does it still satisfy the act's jurisdictional prerequisites? UCCJA § 14. If it does, the decree-state has jurisdiction, perhaps exclusively, unless it chooses to decline it on inconvenient forum grounds. *See* Bodenheimer, *supra* note 2, at 216–19, 222–24.

his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or

(2) the child is physically present in this state and is a child in need of aid as defined in AS 47.10.290; or

(3) it (A) appears that no other state would have jurisdiction under prerequisites substantially in accordance with (1) or (2) of this subsection, or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (B) is in the best interest of the child that this court assume jurisdiction.

(b) Except under (a)(2) and (3) of this section, physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.

(c) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody."

AS 25.30.020.[8] Subsection (1) is not met because Alaska has not been the child's home state for over two and one-half years. Nor is subsection (2) applicable on these facts. Alaska does have jurisdiction under subsection (3), however, because neither California nor Washington, the only other states in which the child has lived, could assert jurisdiction substantially in accordance with subsections (1) or (2), on the facts of this case. Subsection (1), the only possibly applicable provision, could not be satis-

fied by either state as of December 5, 1980, the date the motion for a change of custody was filed and the relevant measuring date.[9] California, where Pamela and the child presently reside, was not a home state at that time.[10] Washington had been the home state, but even under AS 25.30.-020(a)(1)(B) it would not have had jurisdiction because no parent continued to reside there. Because no other court had jurisdiction at the relevant time, subsection (3) above was satisfied and thus the superior court had jurisdiction to consider the motion for a change in custody.

### B. Inconvenient Forum

■ The UCCJA authorizes a court to *decline* jurisdiction if the court is an inconvenient forum. The decision to decline jurisdiction is a discretionary one, *Loper v. Superior Court*, 126 Ariz. 14, 612 P.2d 65, 68 (App.1980); *In re Marriage of Kern*, 87 Cal.App.3d 402, 410, 150 Cal.Rptr. 860, 865 (1978); and requires that certain factors be considered:

"(c) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

(1) if another state is or recently was the child's home state;

(2) if another state has a closer connection with the child and his family or with the child and one or more of the contestants;

8. Alaska's law *omits* the following jurisdictional provision found in the UCCJA:

"(2) it is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships; . . . ."
UCCJA § 3(a).

9. Initial jurisdiction, which California or Washington would have been asserting, must rest on facts developed prior to the initial filing. *Rexford v. Rexford*, 631 P.2d 475 (Alaska 1980).

The initial filing in the posture of this case was Gary's motion for a change of custody. On the other hand, because *declining* jurisdiction is a discretionary act and is distinct from an absence of initial jurisdiction, there is no reason why events and facts up to the date of the motion to decline jurisdiction cannot be considered.

10. A "home state" is one in which the child has resided for six months. AS 25.30.900(5). Pamela and the child moved from Washington to California in September of 1980. Gary's motion was filed December 5, 1980. As of that date, the child had not been in California for six months.

(3) if better evidence concerning the child's present or future care, protection, training, and personal relationships is available in another state;

(4) if the parties have agreed on another forum which is not less appropriate; and

(5) if the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in sec. 10 of this chapter.

(d) Before determining whether to decline or retain jurisdiction the court may communicate with the court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties."

AS 25.30.060.[11] An additional consideration is the parties' convenience and relative hardship in appearing in non-local forums. *See William L. v. Michele P.*, 99 Misc.2d 346, 353–357, 416 N.Y.S.2d 477, 482–84 (Fam.Ct. 1979).

■ The purpose of the above provision is to encourage jurisdictional restraint "whenever another state appears to be in a better position to determine custody of a child." Commissioners' Note to UCCJA § 7. Pamela urged the court to decline jurisdiction on the ground that California, where the child and she reside, is the better forum for examining the child's best interests. The superior court originally denied the motion without explaining its reasons. It was, therefore, difficult to determine whether the court abused its discretion, that is, to determine whether it considered

the statutory factors, or what interpretation it placed on the facts. Thus we remanded for a statement of reasons. We now hold that it is error for a court to deny an inconvenient forum motion brought under AS 25.30.060 without articulating its reasoning. We are requiring the statement of reasons as an aid to the parties in understanding the trial court's decision and as an aid to this court in carrying out its review function.

After remand, the trial court provided the following reasons for denying the inconvenient forum motion:

"1. The State of Washington, which was the child's prior home state, was not a convenient forum since none of the parties at the time of the initiation of this request for custody modification lived in Washington. The mother and child living in California for only a short time and the father having his residence in the State of Alaska. California was not the home state of the child.

2. The child was born in the State of Alaska and lived in Alaska for almost three years. The child has had more contact with the State of Alaska than California.

3. The father has had more contact with Alaska than the mother has had with California.

4. More people involved with the child were from the State of Alaska than the State of California.

5. Substantially the relations on both the father and mother's side were living in Alaska in the Fairbanks area at the time of the request for custody modification. The only people involved in California were the mother and child.

11. The provision specifies these options if the court declines jurisdiction:

"(e) If the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum, it may dismiss the proceedings, or it may stay the proceedings upon condition that a custody proceeding be promptly commenced in another named state or upon any other conditions which may be just and proper, including the condition that a moving party stipulate his consent and submission to the jurisdiction of the other forum.

(g) If it appears to the court that it is clearly an inappropriate forum, it may require the party who commenced the proceedings to pay ... costs, ... necessary travel, ... attorney fees....

(h) Upon dismissal or stay of proceedings ... the court shall inform the court found to be the more appropriate forum of this fact...."

AS 25.30.060.

6. The objections by the mother as to the cost is not a factor since the father is required to pay the cost of transportation as well as arrangements for the mother while in Alaska."

On substantially similar facts, other jurisdictions have stayed or dismissed proceedings in favor of a more appropriate forum. The underlying theme in these decisions is the focus on the *child's* situation and connections with a particular forum; that is, which forum is best in light of the *child's* best interests?

A good analysis of the questions raised here is found in *William L. v. Michele P.*, 99 Misc.2d 346, 416 N.Y.S.2d 477 (Fam.Ct. 1979). The parties in that case were married in New York in 1966. The divorce decree of March, 1974, gave custody to the mother. In August, 1974, the mother, then remarried, moved to Texas. That marriage ended in 1975 or 1976. She subsequently moved to Florida, where she remarried, and then moved, in January, 1977, to Mississippi. When this latest marriage disintegrated, the mother and natural father agreed that the children should start their visitation with him in New York earlier so as to remove them from the domestic turmoil in the Mississippi household. The father retained the children and commenced change of custody proceedings in the New York court in August, 1978, four years after the children and mother had left New York. *Id.* 416 N.Y.S.2d at 479.

After first finding jurisdiction, the court extensively considered whether it was an inconvenient forum. Concluding that it was, the court declined jurisdiction. Before doing so, the court examined five considerations: (a) which state was the home state; (b) which state had the closer connection with the *children*; (c) which state had the most readily available evidence concerning the *children's* present or future care; (d) which party bore the greater hardship in litigating away from home; and (e) whether the exercise of jurisdiction would contravene any of the UCCJA's purposes. *Id.* 416 N.Y.S.2d at 482–84.

The court first noted that Mississippi and not New York was the home state. The court next found that Mississippi held the closer connections *with the children*:

"Likewise, Mississippi appears to have a 'closer connection with the *child* and his family or with the *child* and one or more contestants' .... The repetition of 'child' is apparently intentional and requires a separate analysis of which state has a closer connection with the infant subjects of the proceeding, apart from its connection with the other participants. This is consistent with the emphasis in the entire statute on encouraging a selection of the forum in the optimum position to determine the best interests of the child. While New York and Mississippi each have roughly equal connections with one parent, New York really has had only scant contact with the children since they left the State shortly after the divorce was granted in 1974—a sum total of three summer visitation periods before the petition was filed.... Mississippi, on the other hand, has been the state of continuous residence of the children since January, 1977. It, and not New York, has the primary *parens patriae* interest, and the more substantial nexus." (citations omitted; emphasis in original).

*Id.* 416 N.Y.S.2d at 482.

Then, in determining which forum held the best evidence, the court looked to the legal principles raised by the father's motion to modify custody. Noting that the substance of the father's allegations was that the children were suffering due to the instability of the mother's life, based upon repeated changes of residence and two unsuccessful marriages, and that he, the natural father, now offered a more stable family unit and superior physical surroundings, the court concluded:

"From the foregoing, it is clear that the crucial contested issues of fact raised by the pleadings are concerned with the quality of care exercised by the mother, her stability and the stability of the children's home life with her and the effect, if any, of these factors on the children.... [W]hether this proceeding is

litigated in New York or in Mississippi, the critical inquiry will be concerned with the care, conduct and parental ability of the mother, and whether any deficiencies have had an actually or potentially harmful effect on the welfare of the children. The sources of evidence with respect to these issues are most likely to be located in Mississippi, and .not in New York." *Id.* 416 N.Y.S.2d at 482–83.

Next, in considering relative hardship, the court noted that the father was in a superior economic position, and although he stipulated to pay the mother's way to New York, he did not agree to bring up Mississippi witnesses on "the threshold issue of the mother's fitness and the quality of the children's lives" in that state. *Id.* 416 N.Y.S.2d at 483. Since it was "precisely those witnesses whose direct oral and demeanor evidence would be of most benefit to the court in making an appropriate decision on custody", the court concluded that the hardship on the father to prosecute the action in Mississippi would be less than would be the hardship on the mother to come to New York. *Id.*

Finally, the court considered whether exercising New York jurisdiction would contravene any of the act's purposes. Focusing in particular on the danger of condoning post-visitation retention of the children in order to obtain local jurisdiction, the court noted that "[t]he security and stability of the free interstate movement of the children in this case ... will not be promoted if this court exercises jurisdiction...." *Id.* 416 N.Y.S.2d at 484. The court reasoned that if it assumed jurisdiction, and the father prevailed, the mother might adopt reciprocal tactics and seek modification when the children returned to Mississippi for visitation. Such a pattern of behavior would contravene the act's purposes both of avoiding jurisdictional competition and discouraging continuing controversies over child custody. Accordingly, the court declined to exercise jurisdiction. Other cases have reached similar results.[12]

■ Applying. the foregoing analysis to the facts of this case leads to the same result: Alaska should decline to exercise jurisdiction.

### 1. Home State

As previously discussed, when ruling on an inconvenient forum motion, the trial court may consider all facts up to the date of the motion or hearing. Pamela's dismissal motion was heard on March 9, 1981. As of that time, Sean had lived in California six months and thus, by then, had acquired a new home state. The trial court's conclusion to the contrary is erroneous.

### 2. Closer Connection

Sean was born in Alaska and lived his first three years here. Since the fall of 1978, however, *this child's* only connection with Alaska has been two visitations, one with his grandparents in Unalaska in 1978 and one two-week period with the father in 1979. Sean has, as of the date of this opinion, lived in California for eleven months, and has been enrolled in school there. The child's only connection with Alaska is premised on the fact that his father, and assertedly a majority of the child's relatives, live in Fairbanks (including grandparents, aunts, and uncles). While *the child's* connection with California has not been that long, it is stronger than the connection he now has with Alaska. Contrary to the trial court's conclusion, which state has accumulated a longer duration of contact is not dispositive. The inquiry must be into which state *now* has the closer connection with Sean. We conclude that California best satisfies this element.

### 3. Source of Evidence

The essence of Gary's petition to modify custody is that Pamela lacks the ability to take adequate care of the child because (a)

---

**12.** *See Bosse v. Superior Court,* 89 Cal.App.3d 440, 152 Cal.Rptr. 665 (1979); *In re Marriage of Kern,* 87 Cal.App.3d 402, 150 Cal.Rptr. 860 (1978); *Schlumpf v. Superior Court,* 79 Cal. App.3d 892, 145 Cal.Rptr. 190 (1978); *Clark v. Superior Court,* 73 Cal.App.3d 298, 140 Cal. Rptr. 709 (1977).

she moves too frequently; (b) she is not financially secure; (c) she lacks commercial ties with her community; and (d) she allegedly is interfering with Gary's visitation. Conversely, Gary alleges that he has now completed school, is gainfully employed, has remarried, and that he offers a stable and financially secure environment.

These allegations are similar to those in *William L. v. Michele P.* There the court concluded that the issue of the child's best interests turned, in this type of context, on the *custodial* parent's circumstances. Thus, it concluded, the state where that parent and the child reside offers the bulk of the relevant evidence. Similarly, as the factual issue in this case is primarily the adequacy of Sean's life in California with Pamela, the bulk of evidence is in California.

### 4. Relative Hardship

After this petition was filed, the trial court ordered Gary to pay Pamela's expenses in attending a hearing in Alaska. But, as in *William L. v. Michele P.*, this order does not encompass assisting Pamela in bringing up witnesses to testify as to her, and the child's, existing situation in California. Due to her financial situation, it appears that she would be unable to do so on her own. The hardship to her is, therefore, significant should Alaska exercise jurisdiction: she would be unable to meaningfully defend her custody of Sean.

### 5. Contravention of UCCJA Purposes

Finally, the exercise of modification jurisdiction arguably conflicts with at least one purpose of the act: to "discourage continuing controversies" over custody. AS 25.30.-010(4). If Gary were forced to litigate the modification issue in California, he would be less inclined to challenge Pamela's custody absent substantial cause. If, on the other hand, Gary can utilize a local court, and compel Pamela to respond in Alaska, there is little practical disincentive to not continue the controversy. In other words, the exercise of modification jurisdiction in this case would facilitate non-local harassment of the custodial parent by the losing parent, and would not operate to discourage continuing the controversy.

As we have previously noted, child custody determinations are among the most difficult in the law, and a child may often carry the effects of a custody award for the rest of his life. *Sanguinetti v. Sanguinetti,* 628 P.2d 913, 916 (Alaska 1981). Custody is to be awarded on the basis of the child's best interests. AS 09.55.205. "For this reason it is extremely important that the court be fully informed at the time it makes its initial decision." *Sanguinetti,* 628 P.2d at 916. By the same token, it is extremely important that the appropriate forum make custody determinations. After reviewing all the factors, as well as other cases, we believe that California is the more appropriate forum, in light of this child's best interests, to consider a motion for a change of custody.

The petition for review is granted and the decision below is reversed. The superior court is directed either to grant Pamela's motion to dismiss the modification motion or, alternatively, to stay the proceedings while Gary pursues his claim in a California court. *See* AS 25.30.060(e), *supra* note 11.

BURKE, Justice, concurring in part, dissenting in part.

I would hold that the superior court did not abuse its discretion in refusing to relinquish its jurisdiction on inconvenient forum grounds. I would further hold that that court's jurisdiction to modify its own decree is, therefore, exclusive. B. Bodenheimer, Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction under the UCCJA, 14 Fam.L.Q. 203, 213–25 (1981).