[No. AO24274. First Dist., Div. Three. Nov. 22, 1983.]

STEVEN L. SPEELMAN, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
JANET L. SPEELMAN, Real Party in Interest.

COUNSEL

William M. Hilton for Petitioner.

No appearance for Respondent.

Siegfried Hesse and Mariann C. Cropper for Real Party in Interest.

## OPINION

**BARRY-DEAL, J.**—Petitioner is a Massachusetts father who had custody of his six-year-old son during the 1982-1983 school year and expected that arrangement to continue during 1983-1984. However, during the boy's summer in California, his mother obtained a change of custody, reversing the roles established by the marriage settlement agreement so that the boy now spends the school year with her. The court made this change based upon the "best interests of the child," but ignored the requirement that a change of circumstances be demonstrated before a change of custody is ordered, contrary to the dictates of *In re Marriage of Carney* (1979) 24 Cal.3d 725, 730-731 [157 Cal.Rptr. 383, 598 P.2d 36, 3 A.L.R. 4th 1028]. We annul the trial court's order.

Mathew was born to Steven and Janet Speelman on February 15, 1977. The couple separated in California in 1980, and their marriage was terminated by a California final judgment of dissolution in 1981. In their marriage settlement agreement, the parties established equal physical custody through the summer of 1982, but provided that thereafter Steven, who had been transferred to the Boston area, would have primary physical custody (during the school year), and Janet would have physical custody during the summers. Legal custody was joint.

During the 1982-1983 school year, Mathew lived with his father, potential stepmother Kellie, and three-year-old potential stepsister. He attended kindergarten and, except for complaints about the New England weather and about fighting with a three-year-old sibling, was happy with his living situation. He loves his father and Kellie, who, in the court's words, provide a "fine home."

Toward the end of a summer in California, Mathew thought he would like to stay with his mother. He preferred the climate and liked his mother's swimming pool and the kids in the neighborhood. He recalled missing his mother when he lived in Massachusetts, but found that he was not missing his father very much in the summer (though he said he missed Kellie "a lot"). Of course, his preference is to live with or see both parents at the same time, as he loves them both.

In early 1983, Janet became dissatisfied with the custody arrangement, in part because she had encountered some difficulty in seeing Mathew during the Christmas and Easter holidays. She moved for a change of physical custody. Janet and Steven jointly engaged an independent child psychiatric consultant to conduct an evaluation regarding Mathew's custody. Hugh Ridlehuber, M. D., interviewed all the affected parties and reviewed other information. He reported his findings in a 14-page letter in which he concluded that custody should remain with Steven during the school year.

At a hearing held August 29, 1983, after testimony by Dr. Ridlehuber and the parties, the court took a contrary view. Though the court found that each of the parents presented an equally fine home for Mathew, that they were equally good parents with equal affection and desire for the child, and that there was no change in circumstances, it concluded that the parents' roles should be reversed. The court found that it would be in Mathew's best interest to be with his mother, but referred to his "gut reaction" to the case, and explained his thinking: "I feel that from what I've been able to glean from talking to the two of you that there exists in the situation here the type of nurturing environment which is more necessary for this lad to succeed. That's not to say there's not a nurturing environment in Boston. I think it's

more here. I think contrary to Dr. Ridelhuber's report that a child of this years—of this age can succeed with his mother. [Dr. Ridelhuber had not reported that a child of six could not succeed with his mother. At the hearing, however, he expressed the view that, all else being equal, a male child of Mathew's age would be be better off with a custodial father.] That it's appropriate for the interests of the child to give him a chance to succeed with his mother at this time. And if it doesn't work out, in a year from now we can always find that we've made a mistake. And basically I'm not for shared custody. But I think that—all things considered the best interests of the child are here. You—there is some remark that his mother's household is less rigid than that in the east, or less structured, or looser, and so forth. Frankly, I'm not too much in favor of a military upbringing for a child and—of this age. . . . I think that—he has a better opportunity here in California than he has in—than he had in Massachusetts at the moment. This is not forever. . . ."

After the court ordered this change in custody, Steven appealed and sought a stay from the trial court pending appeal. (Code Civ. Proc., § 917.7.) Janet objected to a stay, arguing that Mathew had already been enrolled in school and that his life and schooling should not be disrupted. The court denied the stay. This petition for writ of supersedeas followed.

Steven prays for an order from this court staying the change of custody pending determination of his appeal. But appellate courts are understandably reluctant to issue such stays where they might lead to multiple changes of custody. (See *C. V. C.* v. *Superior Court* (1973) 29 Cal.App.3d 909, 920-921 [106 Cal.Rptr. 123].) For example, were we to grant the stay here, Mathew would be immediately returned to Massachusetts. That transfer might be temporary; if Steven lost the appeal, Mathew would be returned to California. Rather than risk multiple changes of custody and in order to accelerate our decision concerning the validity of the court's custody order, we treat the petition as a petition for writ of mandate seeking annulment of the superior court's custody order. (Cf. *C. V. C.* v. *Superior Court, supra,* 29 Cal.App.3d 909, 912-913, and fn. 1.)

We find the applicable legal principles in *In re Marriage of Carney, supra,* 24 Cal.3d 725, 729-731, from which we liberally quote for emphasis: "Several principles are here applicable. First, since it was amended in 1972 the code no longer requires or permits the trial courts to favor the mother in determining proper custody of a child 'of tender years.' (E.g., *White* v. *White* (1952) 109 Cal.App.2d 522, 523 [240 P.2d 1015].) Civil Code section 4600 now declares that custody should be awarded 'To either parent according to the best interests of the child.' (*Id.,* subd. (a).) Regardless of the age of the minor, therefore, fathers now have equal custody rights with

mothers; the sole concern, as it should be, is 'the best interests of the child.' (See *Taber* v. *Taber* (1930) 209 Cal. 755, 756-757 [290 P. 36].)

"Next, those 'best interests' are at issue here in a special way: this is not the usual case in which the parents have just separated and the choice of custody is being made for the first time. In such instances the trial court rightly has a broad discretion. (*Gudelj* v. *Gudelj* (1953) 41 Cal.2d 202, 208-209 [259 P.2d 656].) Here, although this is the first actual court order on the issue, we deal in effect with a complete *change* in custody: . . .

■ "It is settled that to justify ordering a change in custody there must generally be a persuasive showing of changed circumstances affecting the child. (*Goto* v. *Goto* (1959) 52 Cal.2d 118, 122-123 [338 P.2d 450].) And that change must be substantial: a child will not be removed from the prior custody of one parent and given to the other 'unless the material facts and circumstances occurring subsequently are of a kind to render it essential or expedient for the welfare of the child that there be a change.' (*Washburn* v. *Washburn* (1942) 49 Cal.App.2d 581, 588 [122 P.2d 96].) The reasons for the rule are clear: 'It is well established that the courts are reluctant to order a change of custody and will not do so except for imperative reasons; that it is desirable that there be an end of litigation and undesirable to change the child's established mode of living.' (*Connolly* v. *Connolly* (1963) 214 Cal.App.2d 433, 436 [29 Cal.Rptr. 616], and cases cited.)

■ "Moreover, although a request for a change of custody is also addressed in the first instance to the sound discretion of the trial judge, he [or she] must exercise that discretion in light of the important policy considerations just mentioned. For this reason appellate courts have been less reluctant to find an abuse of discretion when custody is changed than when it is originally awarded, and reversals of such orders have not been uncommon. (E.g., *In re Marriage of Kern* (1978) 87 Cal.App.3d 402, 410-411 [150 Cal.Rptr. 860]; *In re Marriage of Russo* (1971) 21 Cal.App.3d 72 [98 Cal.Rptr. 501]; *Denham* v. *Martina* (1963) 214 Cal.App.2d 312 [29 Cal.Rptr. 377]; *Ashwell* v. *Ashwell* (1955) 135 Cal.App.2d 211 [286 P.2d 983]; *Sorrels* v. *Sorrels* (1951) 105 Cal.App.2d 465 [234 P.2d 103]; *Bemis* v. *Bemis* (1948) 89 Cal.App.2d 80 [200 P.2d 84]; *Juri* v. *Juri* (1945) 69 Cal.App.2d 773 [160 P.2d 73]; *Washburn* v. *Washburn* (1942), *supra*, 49 Cal.App.2d 581.)

■ "Finally, the burden of showing a sufficient change in circumstances is on the party seeking the change of custody. (*Prouty* v. *Prouty* (1940) . . . 16 Cal.2d 190, 193 [105 P.2d 295]; *In re Marriage of Kern* (1978) *supra*, 87 Cal.App.3d 402, 410-411; *In re Marriage of Mehlmauer* (1976) 60

Cal.App.3d 104, 108-109 [131 Cal.Rptr. 325].)" (*In re Marriage of Carney, supra,* 24 Cal.3d at pp. 729-731, fn. omitted.)

In *Carney* the mother presented evidence purporting to show a change in circumstances, but the Supreme Court found the evidence insufficient as a matter of law and found that the trial judge acted on the basis of a serious misconception about the ability of a quadriplegic father to provide a suitable home for his children. ■ Here, Janet made no attempt to show a change of circumstances, and the trial court found that none existed. Thus, unless *Carney* does not apply, the court's order cannot stand.

Janet argues that *Carney* should be distinguished and the change of circumstances requirement not be imposed because in *Carney* the mother had not seen her sons for almost five years, whereas here Steven's custody over Mathew was not firmly established. She argues that Mathew's nine-month stay in Massachusetts did not create an "'established mode of living'" (*In re Marriage of Carney, supra,* 24 Cal.3d at pp. 730-731, fn. 4) or transform Steven's home into Mathew's "accustomed environment." (*In re Marriage of Mehlmauer* (1976) 60 Cal.App.3d 104, 109 [131 Cal.Rptr. 325].)

We agree that the situation here is different from that present in *Carney.* But the difference is only one of degree. In each, the mother agreed to physical custody by the father and later sought to renege upon that agreement. It is no more appropriate to change custody because of a quick change of heart than because of one taking place five years later unless the change of heart is accompanied by a change of circumstances. The period of the father's custody is significant only in determining whether the changed circumstances are important enough to justify dislodging the children from their current environments. It cannot be used as an excuse to permit a change of custody without changed conditions.

Janet argues that a change of circumstances is not required because *Carney* has been superseded by Civil Code section 4600.5 and the 1979 amendment to Civil Code section 4600 (Stats. 1979, ch. 915, §§ 2-3, pp. 3150-3152). She asserts that the trial court may have changed custody because of Steven's alleged interference with her contact and visitation with Mathew and because by giving Janet primary physical custody, Mathew's frequent and continuing contact with both his parents is better ensured.

■ We find no evidence that Civil Code section 4600.5 and the 1979 amendment to section 4600 abrogated the "change in circumstances" requirement reiterated and explained by *Carney.* At the time of *Carney,* the first preference for a custody award was "[t]o either parent according to the best interests of the child." (Stats. 1972, ch. 1007, § 1, p. 1855, former

Civ. Code, § 4600, subd. (a).) The statute did not define the "best interests of the child." Shortly after the *Carney* decision, the Legislature amended Civil Code section 4600 and added section 4600.5 (Stats. 1979, ch. 915, §§ 2-3, pp. 3150-3152). Those changes facilitated joint custody, implementing a public policy in favor of assuring frequent and continuing contact with both parents and the sharing of the rights and responsibilities of child rearing. (Civ. Code, § 4600, subd. (a).) They did not purport to alter the public goals of ending litigation and minimizing changes in the child's established mode of living or to define the "best interests of the child."

Civil Code section 4600 retains the "best interests of the child" standard, but states as a first preference that custody be awarded "[t]o both parents jointly pursuant to Section 4600.5 or to either parent. In making an order for custody to either parent, the court shall consider, among other factors, which parent is more likely to allow the child or children frequent and continuing contact with the noncustodial parent, and shall not prefer a parent as custodian because of that parent's sex." (Civ. Code, § 4600, subd. (b)(1).) Civil Code section 4600.5 provides in pertinent part: "(a) There shall be a presumption, affecting the burden of proof, that joint custody is in the best interests of a minor child where the parents have agreed to an award of joint custody or so agree in open court at a hearing for the purpose of determining the custody of the minor child or children of the marriage.

"If the court declines to enter an order awarding joint custody pursuant to this subdivision, the court shall state in its decision the reasons for denial of an award of joint custody.

". . . . . . . . . . . . . . . . . . . . . . . .

"(c) For the purposes of this section, 'joint custody' means an order awarding custody of the minor child or children to both parents and providing that physical custody shall be shared by the parents in such a way as to assure the child or children of frequent and continuing contact with both parents; provided, however, that such order may award joint legal custody without awarding joint physical custody.

"(d) Any order for joint custody may be modified or terminated upon the petition of one or both parents or on the court's own motion if it is shown that the best interests of the child require modification or termination of the order. The court shall state in its decision the reasons for modification or termination of the joint custody order if either parent opposes the modification or termination order. . . ."

Civil Code sections 4600 and 4600.5, read together, counsel the trial court to grant joint custody if the parties agree to joint custody and, if they

do not, to consider which parent is more likely to foster contact with the other. Where there is an award of joint custody, Civil Code section 4600.5, subdivision (c), suggests that physical custody should be arranged to enhance contact with both parents. Implicitly, subdivision (d) of Civil Code section 4600.5 adopts the "change in circumstances" requirement by requiring that the court state its reasons for modifying or terminating joint custody if the motion is opposed. It is inconsistent to find both the initial placement and the change of custody to be in the child's best interests if the circumstances have remained the same throughout. ■ ■■■ The requirement for a statement of reasons for the change forces the trial court to articulate how circumstances have changed since the initial decision.[1]

■ "Frustration of visitation rights by the custodial parent is a proper ground for transfer of custody to the formerly noncustodial parent. [Citations.] This concept finds support in the language of Civil Code section 4600, subdivision (b)(1), which provides that in awarding custody as between parents, the trial court should consider '. . . which parent is more likely to allow the child or children frequent and continuing contact with the noncustodial parent, . . .' The Supreme Court has described this concept as a 'significant factor.' [Citation.]" (*In re Marriage of Wood* (1983) 141 Cal.App.3d 671, 682 [190 Cal.Rptr. 469].)

■ Had the trial court found that Steven was frustrating Janet's efforts to see Mathew, the court could have found a change in circumstances which, if of sufficient magnitude, would justify a change of custody. However, the court's comments after the hearing are inconsistent with any implied finding that a change of custody was required to assure frequent and continuing contact with both parents. (E.g.: "[T]he father did not intentionally attempt to—to—to seduce this boy away from his mother's affection or company and that there was no action on his part in which I can really be critical.") Janet acknowledges these comments but asserts that they were not the result of careful deliberation and that by the time the court signed and filed its order, it was entitled to change its mind. Had the court given any indication that it changed its mind or issued findings showing a change of circumstan-

---

[1]We recognize that the "change in circumstances" requirement could be carried to extremes if applied literally in every change of custody hearing. For instance, if the parties stipulated to custody and concealed facts from the court or if one parent concealed facts from both the court and the other parent and the true facts showed that the custodial parent did not provide a suitable environment, it would be absurd to require the noncustodial parent to show that the unsuitable environment had actually worsened since the original order. Reasonably applied, the "change in circumstances" requirement would be met even if the change were not in the child's environment, but in the evidence available to the noncustodial parent or to the court. However, such a loosening of the "change in circumstances" standard would be of little assistance to Janet here, because there is no suggestion that Steven provides an unsuitable home.

ces, we might accept petitioner's argument and examine the record to see if the court's new findings were supported by the evidence. However, the court gave no hint that it was basing its change of custody upon any purported interference with Janet's contact and visitation. We must accept the court's statement of its reasons at face value, not speculate about its reasons for changing custody. (See *In re Marriage of Carney, supra,* 24 Cal.3d 725, 734.)

The court's change of custody without a change of conditions directly violated *Carney.* Therefore, we annul the court's order. Though unlikely, it is possible that during the pendency of this petition additional circumstances bearing on the best interests of Mathew have developed. Thus, we cannot bar the trial court from consideration of such circumstances on remand. (See *In re Marriage of Carney, supra,* 24 Cal.3d 725, 741.) However, we wish to emphasize that in light of the court's prior findings concerning Steven's home and his relationship with Mathew, the changed circumstances must be demonstrable and substantial to justify an award of primary custody to Janet. They cannot be based upon Mathew's enrollment in a local school or other actions flowing naturally from the court's erroneous decision.

In order to expedite return of Mathew to Massachusetts and to prevent frustration of the relief granted, we order that this decision become final as to this court immediately. (Cal. Rules of Court, rule 24(c).) However, we suggest that petitioner consider appropriate timing to ease Mathew's transition back to the Massachusetts school.

Let a peremptory writ of mandate issue directing the Santa Clara County Superior Court to vacate its order changing custody and, unless intervening circumstances dictate otherwise, to enter an order denying Janet's motion for a change of custody.

White, P. J., and Feinberg, J., concurred.