[No. G004132. Fourth Dist., Div. Three. Nov. 12, 1986.]

In re the Marriage of SALLY JANE and LAURENCE LEWIN.
LAURENCE LEWIN, Respondent, v.
SALLY JANE LEWIN, Appellant.

1484

COUNSEL

Marjorie G. Fuller for Appellant.

Richard S. Platt for Respondent.

OPINION

**SONENSHINE, J.**—Sally Jane Lewin appeals from that portion of the interlocutory judgment of dissolution of marriage awarding primary physical custody of the parties' child to Laurence Lewin.

Sally and Laurence were married on August 4, 1982, and separated shortly thereafter in December 1983. Their daughter, Laurie, was born on June 30, 1984. The parties attempted a reconciliation, but that failed, and Sally and Laurie moved out of Laurence's residence in August 1984.

By written stipulations of the parties and resulting court orders, the parties had joint legal and physical custody. Sally was awarded primary physical custody of Laurie until the time of trial. Laurence commenced living with his new wife and her two children in October, and in February 1985 they were married.

Sally and Laurence stipulated to a determination of their property rights and support obligations. The remaining issue of Laurie's custody was bifurcated and finally heard in March 1986. The trial court awarded primary physical custody to Laurence, reserving to Sally reasonable rights of visitation including the first and third weekends of each month and additional holiday and summer visitation.

I

Sally, relying on *In re Marriage of Carney* (1979) 24 Cal.3d 725 [157 Cal.Rptr. 383, 598 P.2d 36, 3 A.L.R.4th 1028] and *Speelman v. Superior Court* (1983) 152 Cal.App.3d 124 [199 Cal.Rptr. 784], argues the change of circumstances from the time of the last order was insufficient to warrant a change of custody.

In *Carney,* our Supreme Court recognized a substantial change of circumstances must be shown before a child can be removed from a parent with whom the child has lived for a significant period. And this, the court acknowledged, is true when custody was originally awarded pursuant to an agreement between the parties rather than a judicial decree. (*In re Marriage of Carney, supra,* 24 Cal.3d 725, 731, fn. 1.)

In *Carney,* the parties separated and by written agreement stipulated the father was to have custody. Four and one-half years later the father filed for divorce and the mother responded by seeking custody of the two children. The court, based on the father's physical handicap, granted the mother's request.

The Supreme Court reversed, flatly rejecting the father's handicap as a basis for an award of custody. More important, however, for our purposes, it recognized ". . . this is not the usual case in which the parents *have just separated* and the choice of custody is being made for the first time. *In such instances* the trial court rightly has a broad discretion. [Citation.] Here, although this is the first actual court order on the issue, we deal in effect with a complete *change* in custody . . . ." (*Id.,* at p. 730, last italics in original.)

The court recognized how custody is originally determined is immaterial. Whether by stipulation or by an explicit or implied agreement, if the parties intend it to be a *final* agreement, a change of circumstance showing is required.

If a final determination is made, the court can thereafter look to see how, if at all, circumstances have changed. "The reasons for the rule are clear: 'It is well established that the courts are reluctant to order a change of custody and will not do so except for imperative reasons; that it is desirable that there be an end of litigation and undesirable to change the child's established mode of living.' [Citation.]" (*Id.,* 24 Cal.3d at pp. 730-731, fn. omitted.)

In *Speelman* v. *Superior Court, supra,* 152 Cal.App.3d 124, the parties as part of their marital settlement agreement, stipulated their six-year-old could live with his father for two school years. The mother was to have custody during the summer. After the first year, however, she changed her mind and successfully petitioned the trial court to give her custody. The Court of Appeal reversed, finding a "quick change of heart" insufficient reason to change the agreement.

The *Speelman* court noted a change of circumstance showing was required even though only nine months had elapsed since the time of the order. Because the issue of custody had been finally determined, the showing was

required regardless. In both *Carney* and *Speelman,* ". . . the mother[s] agreed to physical custody by the father and later sought to renege upon that agreement." (*Speelman* v. *Superior Court, supra,* 152 Cal.App.3d at p. 130.)

██ The change of circumstance rule as pronounced in *Carney* and explained in *Speelman* has no applicability to a pendente lite stipulation or pretrial order or order to show cause. In those situations, the parties have just separated and they do not intend for their pendente lite stipulations or orders to be permanent. Indeed, a review of the clerk's transcript in the instant case reveals all previous custody orders were made in contemplation of the issue being resolved at trial. The agreement entered into was for the purpose of seeing the parties through until the time of trial. It was not, as in *Carney* or *Speelman,* intended as permanent.

Recently in *Burchard* v. *Garay* (1986) 42 Cal.3d 531 [229 Cal.Rptr. 800, 724 P.2d 486], our Supreme Court clarified the change of circumstance rule enunciated in *Carney.* ██ The *Burchard* court explained the rule "requires that one identify a prior custody decision based upon circumstances then existing which rendered that decision in the best interest of the child. The court can then inquire whether alleged new circumstances represent a significant change from preexisting circumstances, requiring a reevaluation of the child's custody." (*Id.,* at p. 534.)

The court, however, emphasized the rule's inapplicability to every situation. For example, "[h]ere there is no prior determination; no preexisting circumstances to be compared to new circumstances. The trial court has no alternative but to look at all the circumstances bearing upon the best interests of the child." (*Id.,* at p. 534.)

Procedurally our facts are very similar to those of *Burchard,* where the father, shortly after the child's birth, stipulated to paternity. ██ ██ ██ ██ A custody battle ensued and the parties agreed "that pending the hearing [the mother] would retain custody, with [the father] having a right to two full days of visitation each week." (*Id.,* at p. 534.)[1]

The *Burchard* court recognized the rule is inapplicable where there has been no prior final custody determination. (*Burchard, supra,* 42 Cal.3d at p. 537.) ██ Implicit in that recognition is the concept the "prior determination" must involve a finding "that a particular custody serves the child's best interests . . . ." (*Id.,* at p. 538, fn. 5.) After that finding has

---

[1]Sally urges we distinguish *Burchard* because there the parties only stipulated to the agreement whereas here, the stipulation resulted in a court order. However, it may well be the parties' stipulation in *Burchard* did in fact result in a court order. Moreover, we fail to see the difference between a pendente lite stipulation and a pendente lite order. Neither involves a "prior determination."

been made, a change in custody can only be ordered if a change in circumstance occurs. And this is true whether the action to change custody is brought within "two weeks after the [original] determination or ten years later." (*Id.*, at p. 538, fn. 5.)

Here, as in *Burchard*, there has been no prior final judicial determination of custody. Res judicata concepts are inapplicable because any prior judicial custody determination was for the purpose of establishing custody pendente lite, not permanently.[2]

*Burchard* did not overrule *Carney;* it clarified the decision. A showing of changed circumstances is unnecessary when there has been no prior final custody determination. *Carney* did not require "use of a changed-circumstance test in cases where there has been no prior custody determination, but . . . affirm[ed] the importance of stability in custody arrangements, placing the burden upon the person seeking to alter a long-established arrangement." (*Id.*, at p. 537.) In other words, once custody is determined, a showing of changed circumstance is necessary to alter that determination. If there is no determination, but there is a long-established arrangement, the burden shifts to the parent wishing to modify the custodial arrangement.

Neither fact situation is applicable here. There has been no prior determination of a permanent custody order. And the parties' arrangement was to be temporary until a court could consider all of the evidence bearing on the ultimate best interest of the child.

Sally ". . . suggests . . . that the [latest order or order to show cause] is the critical event establishing custody, and that the trial court should have focused on whether circumstances had changed since rendition of that judgment. The [permanent] custody of [the minor], however, was not at issue in that proceeding; the stipulated judgment says [it is to be temporary], and there is no showing that [Laurence], by agreeing to that judgment, acknowledged that [Sally's permanent] custody was in the best interest of their child." (*Id.*, at p. 538, fn. 4.)

██ ██ "We conclude that custody in the present case should be decided on the basis of the best interests of the child without requiring

---

[2]The *Burchard* court actually contemplated our precise fact situation. "Consider, for example, a case in which a couple separate, and in the emotional turmoil of the separation the less suitable spouse takes custody of the child. In a later custody proceeding, the noncustodial parent may be able to prove that the custodial parent is unable to provide proper care, but not that his or her ability to do so has deteriorated since the separation. In such a case the changed-circumstance rule might require the court to confirm a custody not in the best interest of the child. . . ." (*Id.*, at p. 538.)

[Laurence] to prove in addition that changed circumstances render it essential that he receive custody. We therefore turn to examine the decision of the trial court to determine whether it abused its discretion in deciding that the best interests of the child required it to award custody to [Laurence]." (*Id.,* at p. 539.)

II

■ Sally attacks the judgment claiming the court based its decision on facts "not bear[ing] directly on the quality of parenting." She challenges the sufficiency of the evidence. In other words, she questions the factual basis for the court's conclusions and their relevancy to the ultimate issue.[3]

Sally, however, misreads the court's statement of decision and ignores the balance of the record. She has picked and chosen only certain aspects of the trial court's findings. The court very articulately and comprehensively defined the factual basis for its decision.[4] It did not, as Sally urges, rely on irrelevant or unsubstantiated factors.

---

[3]Sally, for example, cites to the psychiatric expert who testified there was no need to remove the child from the mother's home. The question is not, of course, whether there was evidence to support a contrary decision. Rather, we must determine if there is evidence to support the decision made.

[4]The trial court ". . . based its decision on the following facts: [¶] (a) [Laurence] is a fit and proper person to have primary physical custody of the minor child; [¶] (b) [Sally] is not a fit and proper person to have primary physical custody of the minor child; [¶] (c) [Laurence] is more likely to allow the minor child frequent and continuing contact with the non-custodial parent; [¶] (d) [Sally] would not allow the minor child frequent and continuing contact with [Laurence] if she were awarded primary physical custody; [¶] (e) On numerous occasions in the past, [Sally] has denied, deprived, frustrated and obstructed [Laurence's] contact with the minor child; [¶] (f) [Sally] has engaged in ongoing conduct intended and designed by her to impede, obstruct, frustrate, and interfere with the development of a healthy father-daughter relationship between [Laurence] and the minor child; [¶] (g) The minor child has now attained an age where she could be adversely affected by conduct designed to interfere, impede and frustrate her relationship with her father and her contact with her father; [¶] (h) [Sally] has threatened to influence the minor child against her father in the future, and such threats if carried out would have an adverse effect on the child and be contrary to the child's best interests; [¶] (i) [Laurence] is a licensed physician, specializing in nephrology and has been continuously and steadily engaged in said practice of medicine in Orange County, California, for a period in excess of 15 years; [¶] (j) [Laurence] has resided in Orange County for over 15 years, and presently lives in Laguna Niguel, California, with his present wife, Linda Lewin; [¶] (k) [Laurence's] wife, Linda Lewin, is a fit and capable person to care for the minor child in [Sally's] absence; [¶] (l) [Laurence] and his present wife are able to provide the minor child with an adequate and proper home life and a stable home environment; [¶] (m) [Sally] is not presently employed, and she has not had regular employment since her marriage to [Laurence]; [¶] (n) [Sally] has changed her primary place of residence on several occasions since October 1985, and presently does not offer a stable home life for the minor child; [¶] (o) [Sally] has made numerous bizarre, outrageous and totally unfounded accusations against [Laurence], which were intended and designed to cause him embarrassment in the professional community and financial harm; it would be in the very best interests of the minor child if she were placed in the permanent physical custody

She specifically attacks findings 1(b), (o), and (r) claiming there was insufficient evidence of her outrageous conduct or the child's safety would be endangered in her custody. But the record is replete with evidence to support these factual conclusions. Sally made unfounded accusations against Laurence. She did so in writings and in conversations. She improperly maligned his new wife, implying drug use and other unfounded charges. She caused the child abuse authorities to investigate and sent a letter to the State Bar accusing Laurence of bribing her past three lawyers.

Her trial testimony, when read in toto, is unreliable and incredible. In almost every instance she contradicted herself. Sally was evasive about her employment plans and had been less than truthful about her whereabouts during the pendency of the proceedings. In short, she is not to be believed. This evidence alone (and there is more) is sufficient to support the findings in question. Each and every designated fact is amply supported by the record. Laurence's lifestyle will provide a more stable environment for the child.

And it is not necessary to have the child witness the conduct in question. It is enough the evidence supported the trial court's conclusion that it occurred. Nor is it mandated she be *already* affected by her mother's actions. The court indicated "the child has now reached an age that [she] could be influenced and affected by that hostility that [Sally] has exhibited and testified to and demonstrated amply in her conduct . . . ." And the trial court specifically linked this conduct to the child's future best interests.

The trial judge, after listening to four days of evidence, was justified in reaching his conclusions. The child's best interests are served by an award of primary custody to Laurence.

## III

 In one last attempt to have us retry the matter, Sally argues the "only detrimental finding regarding [her] is her alleged frustration of visitation and her purported lack of willingness to cooperate in maintaining the baby's

---

of [Laurence]; [¶] (p) [Sally's] conduct in frustrating, and obstructing [Laurence's] efforts to see his daughter have continued during time this matter was being tried; [¶] (q) It would not be in the best interests of the minor child if she were placed in the permanent physical custody of [Sally]; [¶] (r) The health, safety and welfare of the minor child requires that she be placed in the permanent physical custody of [Laurence]; [¶] (s) The health, safety and welfare of the minor child requires that she not be placed in the permanent physical custody of [Sally]."

contact with [Laurence] . . . ." And this finding, she maintains, "is not enough . . . to support an award of custody . . . ."[5]

Again, Sally misreads the court's statement of decision. The award of custody was not based solely on the finding she was likely to deprive Laurence of frequent and continuing contact. As discussed, *ante,* the court enumerated a myriad of reasons for its decision.

Moreover, the evidence amply supports the trial court's conclusion she would violate the mandates of Civil Code sections 4600 and 4608. Sally interfered with Laurence's visitation rights. She moved and failed to notify him of her whereabouts. She wanted the child to grow up regarding another man as her father. The court stated it "believed that the [wife] would make good on her threat that she would laugh on the day when the daughter was old enough to understand all of these things and come to court" and testify about the father.

In enacting Civil Code section 4600, subdivision (b)(1), the Legislature acknowledged the importance of a child's need to maintain frequent and continuing contact with the noncustodial parent. This is the only way a child may grow up knowing both parents. The trial court was correct in concluding Laurence is the parent most likely to allow Laurie this opportunity.

■ Both parents stood before the trial court equally entitled to primary physical custody of their minor child. The fact the child had been with Sally since birth did *not* shift to Laurence the burden of showing a change of circumstances in order to gain custody. Substantial evidence exists to support the trial court's findings.[6]

---

[5]The trial court stated, "The legal basis for [its] decision is set forth in Civil Code § 4600, in pertinent part as follows: [¶] 'In any proceeding where there is at issue the custody of a minor child, the Court may, during the pendency of the proceeding or at any time thereafter, make such order for the custody of the child during minority as may seem necessary or proper . . . (b) custody should be awarded in the following order of preference according to the bests [*sic*] interests of the child pursuant to Section 4608: 1. to both parents jointly pursuant to Section 4600.5 or to either parent. In making an order for custody to either parent, the Court shall consider, among other factors, which parent is more likely to allow the child or children frequent and continuing contact with the non-custodial parent, and shall not prefer a parent as custodian because of that parent's sex . . . .'

"In addition, the Court relied on Civil Code § 4608, which provides, in pertinent part, as follows: [¶] 'In making a determination of the best interests of the child in any proceeding under this title, the Court shall, among other facts it finds relevant, consider all of the following: (a) the health, safety and welfare of the child . . . . (c) the nature and amount of contact with both parents.[']" (Statement of Decision.)

[6]However, the time the child was with Sally is certainly a factor the court could have considered in determining what was in the child's best interests. Those considerations were here, however, clearly outweighed by the other factors cited by the court.

██ "The trial judge, having heard the evidence, observed the witnesses, their demeanor, attitude, candor or lack of candor, is best qualified to pass upon and determine the factual issues presented by their testimony. This is especially true where the custody of minor children is involved. An appellate tribunal is not authorized to retry the issue of custody, nor to substitute its judgment for that of the trier of facts. Only upon a clear and convincing showing of abuse of discretion will the order of the trial court in such matters be disturbed on appeal. Where minds may reasonably differ, it is the trial judge's discretion and not that of the appellate court which must control." (4 Goddard, Cal. Practice (3d ed. 1981) Family Law Practice, § 218, p. 404, fns. omitted.)

Judgment affirmed. Laurence to recover his costs on appeal.

Trotter, P. J., and Crosby, J., concurred.