[No. A038706. First Dist., Div. One. Apr. 24, 1990.]

CATHERINE D., Plaintiff and Appellant, v.
DENNIS B., Defendant and Respondent.

**COUNSEL**

John E. Manoogian and Meredith Bradford for Plaintiff and Appellant.

Bold & Polisner, Jeffrey D. Polisner, De Goff and Sherman and Richard Sherman for Defendant and Respondent.

OPINION

RACANELLI, P. J.—This appeal concerns the custody of Zachary, five years of age at the time of trial. Appellant Catherine D., his mother, challenges the trial court's order awarding primary physical custody to his father, respondent Dennis B. We will affirm for the reasons which we explain.

### FACTUAL AND PROCEDURAL BACKGROUND

As a result of a brief relationship in 1980 between Catherine, then age 23, and Dennis, then age 41, Catherine became pregnant and gave birth to Zachary on March 26, 1981. As an unwed mother, she acquired sole custody of her son as a matter of law. (Civ. Code, § 197.) Dennis did not become aware of Zachary's birth until contacted by local authorities in the course of Catherine's application for welfare assistance. Ultimately, Dennis stipulated to paternity in an action instituted by the district attorney for child support and reimbursement (Dennis eventually stipulated to his ability to pay any reasonable amount of support ordered by the court). The judgment also provided for Dennis's rights of reasonable visitation on alternate weekends. During the ensuing years, the parties became embroiled in a number of adversarial proceedings relating to visitation and support issues. In 1985, an order was made providing for joint legal custody. However, the question of physical custody was never adjudicated prior to the now-challenged order.

In January 1986, Catherine filed a complaint under the Uniform Parentage Act (Civ. Code, § 7000 et seq.) and obtained an order to show cause why legal custody should not be reevaluated, she should not be awarded or retain sole physical custody, and why Dennis's visitation rights should not be reduced. In his responsive pleadings, Dennis objected to the proposed changes asserting Catherine's failure to comply with existing court orders. Hearing began in early May 1986 but was continued for further evidence.

On June 4, 1986, Dennis filed a motion seeking primary physical custody of Zachary. Catherine responded with a motion to refer the matter for a psychological evaluation and to suspend all existing visitation orders.

On July 16, 1986, Dennis initiated contempt proceedings against Catherine based on her alleged violations of earlier visitation orders. The parties ultimately agreed to a psychological investigation and evaluation and to consolidate all related proceedings and pending issues for hearing which resumed on December 10, 1986.

Following several days of testimony, including the testimony and report and recommendation of Elizabeth O'Neill, the expert appointed to evaluate

custody issues, the matter was submitted for decision. On March 19, 1987, the court announced its intention to award primary physical custody to Dennis, contrary to the O'Neill recommendation. (The parties were awarded joint legal custody.) In its lengthy statement, the court reviewed the history of controversy and litigation over visitation. Clearly mindful of the sensitive policy considerations and relevant factors bearing upon custody decisions, the court felt constrained to comment on Catherine's palpable anger and hostility directed to Dennis characterized by her repeated efforts to frustrate his visitation rights and to denigrate his parental role—and the potentially detrimental impact on Zachary's development and well-being if physical custody were to remain with Catherine. The court noted that while no showing of a change of circumstances was required in view of the absence of a preexisting custody order, material circumstances relevant to custody had in fact changed over the years and that the best interests of Zachary, assuring his "intellectual, social and moral growth" would be served by awarding physical custody to Dennis. The court expressly discounted the relative disparity in financial means as a factor in its determination.

Catherine's subsequent motions for reconsideration and stay of execution were thereafter heard and denied.[1] The court also made an order requiring review of the matter the following year and for payment of some of Catherine's attorney fees.[2]

## CONTENTIONS

Catherine argues that a showing of changed circumstances was required and is not supported by the record. Further, she contends that the trial court erroneously applied the "best interest" standard.

Dennis counters that the correct standard of proof was used and that no abuse of discretion is manifested.

## DISCUSSION

It is settled law that in deciding between competing parental claims to custody, the court must make an award according to the best interests of

---

[1] Catherine's petition for a writ of supersedeas filed with this court, opposed by the attorney previously appointed by the trial court to represent the minor, was summarily denied on May 28, 1987 (No.A038535).

[2] We decline to take additional evidence related to that review proceeding by way of augmentation as requested by respondent's counsel. Additionally, while Catherine has properly noticed an appeal from the attorney fee order, the point is deemed waived by her failure to raise and argue the issue in her opening brief. (See *In re Marriage of Schroeder* (1987) 192 Cal.App.3d 1154, 1163-1164 [238 Cal.Rptr. 12].)

the child. (Civ. Code, § 4600, subd. (b).) This test, established by statute, governs all custody proceedings. (*Burchard* v. *Garay* (1986) 42 Cal.3d 531, 535 [229 Cal.Rptr. 800, 724 P.2d 486, 62 A.L.R.4th 237].) Further, in making an order for parental custody, the court must consider, inter alia, "which parent is more likely to allow the child . . . frequent and continuing contact with the noncustodial parent, and shall not prefer a parent as custodian because of the parent's sex." (Civ. Code, § 4600, subd. (b)(1).) And in determining the child's best interest, the court must consider, among other relevant factors, "[t]he health, safety, and welfare of the child . . . [and ¶] [t]he nature and amount of contact with both parents." (Civ. Code, § 4608, subds. (a), (c).)

### I.

### *Changed Circumstances Rule*

■ We review an award of custody by considering whether the determination made was within the sound discretion of the trial court. (See *In re Marriage of Carney* (1979) 24 Cal.3d 725, 731 [157 Cal.Rptr. 383, 598 P.2d 36, 3 A.L.R.4th 1028] (*Carney*).) ■ Catherine argues, alternatively, that the trial court erred in ruling that no change of circumstances need be shown and that in any case, previous orders implicitly awarded her custody thus requiring that changed circumstances be demonstrated. She is wrong on both counts.

In the seminal case of *Carney, supra,* the Supreme Court announced the rule that "to justify ordering a change in custody there must generally be a persuasive showing of changed circumstances affecting the child." (24 Cal.3d at p. 730.) The court stressed that the change must be substantial, so as to render it essential or expedient for the welfare of the child that there be a change. (*Ibid.*) "The reasons for the rule are clear: 'It is well established that the courts are reluctant to order a change of custody and will not do so except for imperative reasons; that it is desirable that there be an end of litigation and undesirable to change the child's established mode of living.' [Citation.]" (*Id.*, at pp. 730-731.) In *Carney,* the mother who had originally relinquished custody to their father, sought custody in connection with a dissolution action although she had little contact with her children during the nearly five years of separation. The Supreme Court reversed the order awarding her physical custody, emphasizing the changed circumstances rule and instructing the trial court that the father's accident-related quadriplegic condition was not prima facie evidence of unfitness.

The changed circumstances rule as expressed in *Carney* was clarified in *Burchard* v. *Garay, supra,* 42 Cal.3d 531 (which also involved unmarried

parents), where the Supreme Court held the rule inapplicable in the absence of a prior judicial determination of custody. "The [changed-circumstance] rule requires that one identify a prior custody decision based upon circumstances then existing which rendered that decision in the best interest of the child. The court can then inquire whether alleged new circumstances represent a significant change from preexisting circumstances, requiring a reevaluation of the child's custody." (*Id.*, at p. 534.) The court went on to explain: "The changed-circumstance rule is not a different test, devised to supplant the statutory test, but an adjunct to the best-interest test. It provides, in essence, that once it has been established that a particular custodial arrangement is in the best interests of the child, the court need not reexamine that question. Instead, it should preserve the established mode of custody unless some significant change in circumstances indicates that a different arrangement would be in the child's best interest. The rule thus fosters the dual goals of judicial economy and protecting stable custody arrangements. (*In re Marriage of Carney* (1979) 24 Cal.3d 725, 730-31 [157 Cal.Rptr. 383, 598 P.2d 36, 3 A.L.R.4th 1028]; *Connolly* v. *Connolly* (1963) 214 Cal.App.2d 433, 436 [29 Cal.Rptr. 616].)

"·    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"The *Carney* decision, it is clear, did not turn on any difference in result between the changed-circumstance rule and the best-interest standard. We spoke in terms of changed circumstances simply because William Carney's injury occurred after he had held custody for a significant time. There is not the slightest suggestion that the best interests of the children required an award to the mother, and that she lost only because she did not also prove a significant change in circumstances.

"In sum, *Carney* had nothing to say on the importance of protecting prior custody determinations by forbidding the courts from reconsidering the circumstances which led to those determinations. Instead, it spoke of the importance of protecting established modes of custody, however created, not by limiting the breadth of the evidence, but by requiring the noncustodial party to show that a change would be in the best interests of the child. Consequently, we do not read *Carney* as requiring use of a changed-circumstance test in cases where there has been no prior custody determination, but as one affirming the importance of stability in custody arrangements, placing the burden upon the person seeking to alter a long-established arrangement." (*Burchard* v. *Garay, supra*, 42 Cal.3d at pp. 535, 537; see also *In re Marriage of Lewin* (1986) 186 Cal.App.3d 1482 [231 Cal.Rptr. 433] [parties equally entitled to custody because no prior judicial determination, only pendente lite order].)

The *Burchard* court further explained that although a final judicial decree was necessary, an adversarial hearing was not inevitably required. (42 Cal.3d at p. 535.) In analyzing the differential effects of the changed circumstances and best interest rules in the context of maintaining stable custodial and emotional ties in the child's interest, the court acknowledged that "custody lawfully acquired and maintained for a significant period will have the effect of compelling the noncustodial parent to assume the burden of persuading the trier of fact that a change is in the child's best interest. That effect, however, is different from the changed-circumstance rule, which not only changes the burden of persuasion but also limits the evidence cognizable by the court." (*Id.*, at p. 536.)[3]

In any event, Catherine insists that four previous court orders actually served as "judicial determinations" of custody thus satisfying the predicate requirement of the changed-circumstance rule. She contends that the prior orders at least implicitly awarded her physical custody in specifying various visitation arrangements. The contention does not withstand scrutiny.

We consider the subject orders in sequence:

*Order Filed May 14, 1982*

This order was based on a stipulation establishing Dennis's paternity, providing child support, a visitation schedule, and requiring reimbursement to the county for welfare payments. But, as Dennis correctly points out, Catherine was not a party to the original action brought by the county against him. Moreover, a similar claim was made and rejected in *Burchard,* the court noting that custody was not at issue in the stipulated paternity judgment, the judgment was otherwise silent on that subject, and there was no showing that the father thereby acknowledged that maternal custody was in the best interest of the child. (*Burchard* v. *Garay, supra,* 42 Cal.3d 531, 538, fn. 4.)

Catherine's assertion that these defects were cured when the parties stipulated to transfer the paternity judgment to the new action conveniently disregards the absence of any showing that physical custody was at issue or even considered at the time of such transfer.

*Order Filed June 23, 1983*

This order, based on stipulation of the parties, provided for Dennis's expanded visitation rights coupled with increased child support and

---

[3] Dennis's suggestion that the changed-circumstances rule be discarded, a sentiment seemingly echoed in Justice Mosk's concurring opinion (*Burchard* v. *Garay, supra,* 42 Cal.3d at pp. 550-551, fn. 1 [conc. opn. of Mosk, J.]), is, of course, beyond our province. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937].)

payment of Catherine's car loan in exchange for Zachary assuming Dennis's surname. The order further provided that Dennis would abandon his custody motion. Again, there is simply no indication that the order constituted a judicial determination of custody, an issue neither litigated nor agreed to as in Zachary's best interests.

*Order Filed January 22, 1985*

This order of modification prescribed detailed notice requirements in conjunction with the exercise of visitation, among other things. The order awarded joint legal custody to the parties while deferring specification of the circumstances mandated by Civil Code section 4600.5, subdivision (e) to a future time. The question of physical custody was in no way implicated, let alone decided.

*Order Filed May 22, 1985*

This order described areas deemed appropriate for joint decisions deferred in the previous January order (e.g., identity of medical care providers, schools, programs, religious training, discipline). The order further provided that disagreements may be submitted to the court for resolution and that Catherine, "as the party with physical custody," shall make any necessary prehearing interim decisions.

Catherine seizes upon the quoted language as unequivocal evidence of a judicial determination of custody in her favor. However, in a declaration filed in connection with posttrial motions, the court commissioner who made the order (as well as previous orders) stated that custody had *not* been litigated, and that no evidence bearing upon the relative custodial merits was presented.

While it is true, as Catherine claims, that such stipulated orders have the force of law (see *Estate of Burson* (1975) 51 Cal.App.3d 300, 306 [124 Cal.Rptr. 105]), they cannot—without more—serve as an unacknowledged substitute for a judicial determination of the best interests of the child.

We conclude the court did not err in determining that the changed-circumstances rule was inapplicable.

## II.

*Sufficiency of Evidence Supporting Findings Best Interest Served by Awarding Dennis Custody*

■ Preliminarily, we note "we are bound by the established rules of appellate review that all factual matters will be viewed most favorably to the prevailing party [citations] and in support of the judgment [citation]. All issues of credibility are likewise within the province of the trier of fact. . . . All conflicts, therefore, must be resolved in favor of the respondent." (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925-926 [101 Cal.Rptr. 568, 496 P.2d 480].) ■ Moreover, in examining the sufficiency of the evidence to support a challenged finding, we " '. . . must accept as true all evidence tending to establish the correctness of the finding as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion.' [Citations.] If appellate scrutiny reveals that substantial evidence supports the trial court's findings and conclusions, the judgment must be affirmed." (*Board of Education* v. *Jack M.* (1977) 19 Cal.3d 691, 697 [139 Cal.Rptr. 700, 566 P.2d 602].)

■ " 'The trial judge, having heard the evidence, observed the witnesses, their demeanor, attitude, candor or lack of candor, is best qualified to pass upon and determine the factual issues presented by their testimony. This is especially true where the custody of minor children is involved. An appellate tribunal is not authorized to retry the issue of custody, nor to substitute its judgment for that of the trier of facts. Only upon a clear and convincing showing of abuse of discretion will the order of the trial court in such matters be disturbed on appeal. Where minds may reasonably differ, it is the trial judge's discretion and not that of the appellate court which must control.' (4 Goddard, Cal. Practice (3d ed. 1981) Family Law Practice, § 218, p. 404, fns. omitted.)" (As quoted in *In re Marriage of Lewin, supra*, 186 Cal.App.3d 1482, 1492.)

We highlight the salient findings together with the evidentiary underpinning.[4]

■ In its statement of decision, the court noted a number of factual circumstances which had changed over the years. Though Catherine has been the primary physical caretaker since the birth of Zachary, with visita-

---

[4]Notwithstanding well established principles governing review, Catherine's brief recites a factual and evidentiary account that substantially disregards the evidence favorable to the order and judgment below.

tion reserved to Dennis, she has engaged in an ongoing course of conduct designed to frustrate visitation rights and to interfere with the normal development of a healthy father-son relationship during Zachary's formative years. Disruptive and destructive tactics included her initial insistence on being directly involved in visitation activities, frequently manifesting in the child's presence her open hostility towards Dennis in a manner calculated to deliberately undermine his parental role. The record reflects numerous examples of her ill-motivated conduct, such as telling the boy his father denied them adequate financial support; inferring that his visitation prevented special activities; denigrating Christmas visitation by promising additional gifts at home; and attempting to persuade Zachary that his visitations were an obligation rather than a benefit. On one occasion, Catherine disrupted an agreed, planned summer-month visit by causing a commotion at Dennis's office and later arriving with a police escort to take Zachary home with her.

The record is replete with examples of Catherine's constant unilateral modification of established visitation schedules, necessitating frequent telephone calls, changes of time and place of pickup and return, as well as verbal harassment of Dennis's employees involved in making necessary arrangements in Dennis's behalf.

Catherine's anger-fueled campaign seemingly knew no limit. In addition to attempting to instill in Zachary a negative attitude towards his father (the court finding she had actually "brainwashed" Zachary against his father), she consistently interfered with school authorities (even threatening to sue) for the singular purpose of frustrating Dennis's planned visits and vacation trips, and to such a degree that school officials decided against Zachary's further attendance. And there was no indication that Catherine had any intention or inclination to alter her behaviour or conduct insofar as it directly impacted Zachary's best interests. Indeed, as previously noted, the court was moved to comment on the Jekyll-Hyde persona manifested by Catherine during cross-examination.

The court also found that Dennis was the parent more likely to expose Zachary to a wider spectrum of interests promotive of intellectual growth, social and moral development. Most importantly, the court determined that Dennis was the parent more likely to permit Zachary's frequent and continuing contact with the noncustodial parent, Catherine. Together with Catherine's unrelenting pattern of frustrating Dennis's visitation rights, such factors alone provided adequate grounds for changing custody. (Civ. Code, § 4600, subd. (b)(1); *Burchard* v. *Garay, supra*, 42 Cal.3d 531, 540, fn. 11; *In re Marriage of Lewin, supra*, 186 Cal.App.3d 1482, 1490-1491; *Speelman* v. *Superior Court* (1983) 152 Cal.App.3d 124, 132 [199 Cal.Rptr. 784].)

Catherine's complaint that the court failed to properly evaluate policy considerations favoring stable custodial arrangements, including the O'Neill recommendation that custody remain with her, finds little support in the record.[5] Although there was some evidence that as primary caretaker Catherine had established a strong psychological parental bond, the court had a substantial body of evidence before it to weigh and consider in reaching its determination. While much of the evidence was conflicting, it amply supported the findings upon which the custody determination was made in the best interests of Zachary. That test having been fully satisfied on the record presented, we are bound to uphold it.

■ Finally, we do not share counsel's fear expressed at oral argument that our decision upholding the findings below will effectively preclude any future custodial change. The overriding concern is and remains the best interests of the child, a matter subject to the court's continuing jurisdiction upon a proper showing of a significant change of circumstances.

The judgment is affirmed.

Stein, J., and Holmdahl, J.,* concurred.

---

[5] Cross-examination of O'Neill revealed that her opinion was essentially based on her interviews with Catherine alone; additionally, she failed to ask Dennis about conflicting accounts of major incidents.

* Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.