Filed 9/23/15  E.C. v. B.F. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| E.C., | D066841 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. ED88270) |
| B.F. , | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Robert Amador, Judge.  Affirmed.

Law Offices of Vincent W. Davis & Associates and Zahra Mohammed for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

E.C. (Mother) and B.F. (Father) never married but had two children together.  When they separated, Father moved to Northern California and the children remained with Mother in San Diego County.  The court initially awarded the parents joint legal custody with

primary physical custody to Mother. About 18 months later, the court granted Father's modification petition, and awarded Father primary custody. The court found changed circumstances and the modification was in the children's best interests.

Mother appeals, contending the court abused its discretion in modifying the custody arrangement. Father was unrepresented in the proceedings below and did not file a respondent's brief in this court. However, an appellant has the burden of showing reversible error even in the absence of a respondent's brief. (See Cal. Rules of Court, rule 8.220(a)(2).) After reviewing the record and considering Mother's numerous arguments, we determine Mother did not meet her burden to show reversible error.

FACTUAL AND PROCEDURAL SUMMARY[1]

Father and Mother lived together beginning in 2002, and had two sons born in 2007 and 2009. In April 2012 the couple separated and Father moved to Northern California where he had family and believed he would have better employment prospects. The boys stayed with Mother, who was living with the maternal grandmother and other relatives.

Mother and Father disputed custody, each seeking to provide the primary residence. After a Family Court Services mediation in February 2013, the mediator recommended the children stay with Mother and be allowed to visit Father at least one weekend per month, and

[1]    In designating the appellate record, Mother included evidence supporting her position but omitted various unfavorable documents, including Father's modification petition and the child welfare agency (CWS) reports reviewed by the court. This alone would permit us to conclude Mother has forfeited her appellate arguments. (See *Wagner v. Wagner* (2008) 162 Cal.App.4th 249, 259.) However, in the interests of justice we will consider Mother's appellate contentions after augmenting the record to include the entire superior court file. (Cal. Rules of Court, rule 8.155(a)(1)(A).)

during breaks and holidays. The mediator concluded the children would not benefit from any major life change that would disrupt their established routines and current stable situation.

In April 2013, the court issued an order adopting the custody and visitation arrangement recommended by the family services mediator. Under this arrangement, the couple would have joint legal custody; Mother would maintain primary physical custody with visitations by Father; and they would meet at a halfway point to exchange the children. Shortly after, Mother remarried and had a daughter with her new husband.

During the next year, Father successfully brought several motions compelling Mother to abide by the court-ordered visitation schedule. While giving birth to a second daughter in 2014, Mother tested positive for marijuana. The hospital contacted CWS, which attempted to conduct an investigation, but was unable to do so because Mother and maternal grandmother refused to cooperate.

In June 2014, Father moved to modify the custody order and sought primary custody of the boys. In support, Father filed a declaration asserting that Mother was not properly providing for the children. He stated the boys (five and six years old) were not enrolled in any school, including Mother's claimed homeschooling program. Father said that neither child has had medical or dental care, and Mother refused to provide Father with insurance information when he tried to make medical appointments for them. Father also said Mother refused to cooperate with his visitations. He said he had five scheduled visits in the prior 12 months, but to implement the visits he required the assistance of law enforcement and/or a court order. Father also stated there are nine people living in the maternal grandmother's

3

house, and the boys sleep in the living room on the floor. Father said the boys would have their own bedroom in his residence and would be enrolled in a public elementary school and daycare facilities. He said he lives with his girlfriend and has many family members in the area who are available to assist with the boys' care.

In objecting to the custody change, Mother filed her own declarations stating she has been the children's primary caretaker since their birth and the boys share a close bond with their half-sisters and their maternal grandmother. She denied Father's assertions regarding schooling, stating the boys have been in an accredited homeschool program and are now enrolled in a public elementary school. She said Father has been "very difficult to deal with," and was the cause of the problems with respect to visitation and that he "lied" to the court on numerous occasions. She also stated Father has refused to pay the ordered child support. She additionally denied using marijuana, stating her doctors had confirmed the blood test result was a false positive caused by her gestational diabetes. She argued that "Father's request to change custody is simply more of the same. . . . He has never met the legal standard and it has never been about the boys. It is about power, control and payback."

After the parties participated in a second family services mediation, the mediator recommended a custody change and that primary physical custody be granted to Father. The mediator's reasons for this recommendation included: (1) Mother had failed to enroll the children in school or in a valid homeschool program; (2) the CWS reports showed that Mother and her family refused to allow investigators access to the home to evaluate the children's status and welfare; (3) Mother failed to obtain required immunizations for the

4

children; and (4) the children lack basic skills including how to use forks and spoons.[2]

The court held a hearing on September 18, 2014. At the hearing, Mother's counsel challenged each of the grounds for the report. With respect to the CWS investigation, Mother's counsel said that CWS had since completed its investigation and concluded the neglect allegations were " 'unfounded.' " Mother's counsel also represented that the children were currently attending public school; both were "eligible" to be in second grade based on their homeschool education; and they had their "first round of immunizations yesterday." Counsel also argued that permitting Father to have primary custody would improperly separate the children from their primary caretaker (Mother) and their two younger sisters (an infant and a one-year-old).

In opposing Mother's arguments, Father emphasized the facts showing Mother had refused to cooperate on child-rearing issues and had hindered his visitations, requiring numerous ex parte motions "in this courtroom." He additionally challenged Mother's claim that she had appropriately homeschooled the children. He stated: "My children [have] missed entire years of education. [Mother] claims they should be in the second grade; however, my oldest cannot read. He can barely spell his first name. . . . My children do not meet the requirements to pass the first grade or kindergarten for that matter." Father additionally discussed CWS's numerous prior contacts with Mother, and the fact that she continues to test positive for marijuana.

---

[2]    The portion of the report identifying the grounds for the mediator's recommendation is missing from the record. Nonetheless we are able to describe the grounds based on statements made by Mother's counsel and the court at the hearings.

After considering the evidence and the parties' arguments, the court granted Father's motion. The court explained its ruling as follows:

> "I have seen the two of you here time after time after time. One of the issues is the fairness of whether or not [Father] is allowed to parent his child[ren]. Time after time [Mother] has refused to allow [Father] to parent his child[ren]. She has set up road block after road block. This court does not believe that [Mother] is willing to, in fact, allow him to parent his child[ren].
>
> "The other thing is that this court does not believe that [Mother] is properly parenting the child[ren]. The home schooling that she does, this court has been given no information that this home schooling is being done. There is no home schooling. When [Mother] came here before . . . there was almost an entire year's worth of school that wasn't done. I am not sure what your idea of home schooling is, or what is going on, but that is not educating a child. It is a detriment to the child not to be properly educated.
>
> "This court finds that there has been a detriment to the children [and] . . . finds it is in the best interest of the children to award custody to [Father] at this time. The court is going to follow the recommendation of family court services. [The parents] share joint custody. Physical custody, the children shall primarily reside with [Father]. Mother's time with the children will be according to the schedule defined under holiday and school vacations. The court will adopt the remainder of the report.
>
> "[¶] . . . [¶]
>
> ". . . . This court does not make this decision lightly. This court considered this for a period of time. This court got the information from [CWS] and noted that [Mother] was extremely hostile in the past . . . when they came out to the residence. She refused contact by [the social worker].
>
> "It doesn't matter to the court that [Mother] or her family is anti-government. That is their right as it is anybody's in regards to what their feelings are in regards to the government. There are plenty of people that feel that particular way when [CWS] is trying to do their job. They are essentially stopping [CWS] from determining what is in the best interest and welfare of the children. Only after the court essentially warn[ed] [Mother] of what is going to happen and [CWS] comes out and now there is this lingering report."

The court stated that because its determination had the effect of a "move away" order, it would stay the order for 30 days until October 18. Mother's counsel asked the court to instead stay the order for 90 days and conduct a review at that time to consider the updated CWS report. The court denied the extended stay request, but scheduled a hearing on October 16 to consider any new circumstances or additional arguments.

Mother then filed a supplemental declaration and her counsel's declaration. In her declaration, Mother repeated much of the information she had asserted earlier, including that she has been the primary caretaker since the children's birth; she never hindered Father's visitation; Father never fully exercised his visitation rights; and she had properly homeschooled the children. She also said the children have been enrolled in a public elementary school "since August 2014," and it would not be in the children's best interest to disrupt their education. She asserted that she is not taking any drugs and it is "unfair" to use positive drug tests against her. She said she has a history of false positive drug tests, and has "sought the care of a doctor to determine why I am testing positive. My doctor believes that a false positive drug-test could be attributable to numerous reasons including my insulin spikes (gestational diabetes with every pregnancy) and low white blood count. My doctor referred me to a specialist to determine why the drug tests are positive when I am not taking drugs."

Mother also presented numerous photographs and other evidence showing the children's homeschool work, school reports, and other activities.

In the updated CWS report, the CWS social worker concluded the current neglect allegations were "**Unfounded,**" stating "[t]here was no evidence to indicate that the

7

children's needs were not being met, even considering the fact that [Mother] tested positive for marijuana." But the social worker found the potential risk to the children was "High, due to [numerous] previous CWS referrals for [n]eglect." The social worker also discussed Mother's prior refusals to permit an investigation, but willingness to do so now because of the court's order.

At the October 16 hearing, Mother's counsel stated the primary problem concerned the parents' lack of financial resources to transport the children and the parents' inability to effectively communicate, and urged the court not to punish the children for these problems. Counsel asserted that the children were well cared for and there were no changed circumstances, and requested the court to review the most recent CWS report. In response to the court's direct question, Mother denied using marijuana. Father discussed evidence showing that Mother's claims about school enrollment and immunizations had been documented to be false. He also reiterated that each time he attempted to visit with the boys, he had been required to file ex parte motions with the court.

After considering the new evidence and arguments, the court denied Mother's request that it change its September 18 order. The court expressed skepticism regarding the validity of the recent CWS findings of no protective issues, noting that the investigation was performed after a long delay and after Mother was aware the report would be presented to the court for purposes of the custody proceedings. The court also discussed Mother's positive marijuana test results, stating that Mother's denials and attempted excuses were "ridiculous": "The drug test report that I have is not some dip stick report. This is a report which . . . is a medical test . . . . [reflecting] nanograms per milliliter . . . ." The court stated

8

that "smoking marijuana is not a reason to take your children away . . . It doesn't mean that you can't parent. It doesn't mean that you are a dangerous parent. But what happens is that, to this court, when you are not truthful with the court, it makes everything else that you have to say entirely suspect." The court then stated:

> "This court remembers both of you over the last year. And what happens is it is in the best interest of the children for them to be properly educated. And what happens is that it is clear, over the last year or longer, that you've been home schooling the children, but . . . they haven't been properly educated. You'd like to say that they are. They haven't done what they were supposed to do, and it's the history of this particular case. You're not being honest with the court. You haven't been truthful with the court. And you weren't cooperative with child protective services.
>
> ". . . [A]nd you have not co-parented with [Father]. Now, he's missed some time. And the question is for this court, because he's missed some of his parenting time, does that mean the court should change the parenting plan? And that, in by itself, the answer is no. . . .
>
> "But the problem is that it is the underlying problems with this where I have children[ ] who you simply refuse to educate . . . and you weren't educating them. And what happens now is that they're in a new school and suddenly [you are claiming] it is all better. What you've done in the past two months makes everything fine, where you're [previously] refused to parent. . . .
>
> ". . . And I made this decision a month ago. I said I'll . . . review this based on the [CWS] report. There's nothing in the [CWS] report that changes the court's mind from the decision that I previously had made, and the court is not changing its mind.
>
> "The court feels that it is in the best interest of the children for the father to have the custody of them based upon all of the reasons which I have previously stated; that it is in their best interests that they are with their father."

9

## DISCUSSION

### I. *Applicable Legal Principles*

The legal standard governing a request to modify a custody arrangement depends on whether the existing custody order is permanent or temporary. An existing permanent order may be changed only upon a showing of a substantial change in circumstances. (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 256 (*Montenegro*).) Under this rule, the moving party must establish that the circumstances have changed and the custody modification is in the child's best interests. (*Ibid.*) By contrast, to modify a temporary custody order, the moving party must show only that the proposed modification is in the child's best interests, and need not show changed circumstances. (*Id.* at pp. 255-259.)

Under either standard, we evaluate a court order granting a modification under a highly deferential standard. (*Montenegro, supra*, 26 Cal.4th at p. 255; *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32 (*Burgess*).) Trial courts have broad discretion to determine the appropriate custody arrangement. "The test is not whether this court would have made the same order or whether the trial court could have reasonably made some other order, but 'whether the trial court could reasonably have concluded that the order in question advanced the "best interest" of the child.' " (*Lester v. Lennane* (2000) 84 Cal.App.4th 536, 595.) We may not reverse the court's best-interests determination unless the court's decision was " ' "arbitrary, capricious, or patently absurd." ' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.)

When an appealing party challenges the sufficiency of the evidence supporting the trial court's custody ruling, we affirm the order if it is supported by any substantial evidence. (*Catherine D. v. Dennis B.* (1990) 220 Cal.App.3d 922, 931.)  " ' "An appellate tribunal is not authorized to retry the issue of custody, nor to substitute its judgment for that of the trier of facts.  Only upon a clear and convincing showing of abuse of discretion will the order of the trial court in such matters be disturbed on appeal.  Where minds may reasonably differ, it is the trial judge's discretion and not that of the appellate court which must control." ' " (*Ibid.*)

## II.  *Analysis*

The record is unclear whether the initial April 2013 court order was intended to be a permanent, final order requiring a change of circumstances and a best interests showing, or whether it was an interim order requiring only a best interests analysis.  However, we need not resolve this issue because the court's ruling was supported under both tests.  The court's order clearly encompassed findings on the children's best interests *and* changed circumstances.  The court granted Father's modification request based on its findings that *after* its initial custody order, Mother repeatedly interfered with Father's visitations and refused to provide a proper education for the boys.  These were proper grounds to base the custody modification ruling.

First, the evidence supports the court's conclusion that Mother had refused to engage in appropriate coparenting, and had intentionally blocked Father's attempts to exercise his visitation rights.  A parent's interference with the children's contacts and relationship with the other parent is a significant factor in a custody determination.  (See Fam. Code, § 3040,

11

subd. (a)(1); *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1094, 1101 (*LaMusga*)); *Burgess*, *supra*, 13 Cal.4th at p. 36, fn. 6.) California has a strong public policy of encouraging shared child rearing and "assur[ing] that children have frequent and continuing contact with *both* parents . . . ." (Fam. Code, § 3020, italics added.) Thus, in making custody determinations, courts must consider " 'which parent is more likely to allow the child frequent and continuing contact with the noncustodial parent.' " (*Keith R. v. Superior Court* (2009) 174 Cal.App.4th 1047, 1053; see *In re Marriage of Steiner & Hosseini* (2004) 117 Cal.App.4th 519, 529.) The court reasonably relied on Mother's history of frustrating Father's contact with the boys to conclude Mother's continued custody was not in the children's best interest and that Father would better assure the noncustodial parent (Mother) would have the required visitation and a continuing shared bond with the children.

The court's focus on the children's educational needs was also a proper consideration in making the best interests finding. (See *Burgess, supra*, 13 Cal.4th at p. 39.) The evidence showed the boys were not receiving an appropriate education, either through a homeschool program or enrollment in a public school. The court had a reasonable basis to find Mother's homeschooling claims were not credible and her last-minute efforts to enroll the boys in a public school did not show Mother was willing and able to provide an adequate education. The court was further entitled to credit Father's assurances that he would fully provide for the children's educational needs. The evidence also showed Mother and her family repeatedly refused to permit the child welfare agency to investigate claims of neglect, leading to a legitimate concern whether Mother was focused on her children's best interests, as opposed to her own interests.

12

Mother contends the court did not sufficiently evaluate the children's "health, safety, and welfare," including the potential detriment to the boys from being uprooted from their established home, mom, grandmother, and siblings. Based on the court's statements, we are satisfied the court fully considered these issues. In deciding to grant Father's motion, the court implicitly found that any short-term detriment resulting from the move would be substantially outweighed by the long-term benefits to the boys, particularly given the children's young ages and ties with Father and the importance of a positive educational experience in the early years. The court acted within its discretion in reaching this conclusion. Although the need for stability in a child's life is of primary importance in deciding custody arrangements, a court must consider *all* the relevant circumstances, including a child's relationship with each parent, the relationship between the parents, and the child's age, community ties and educational needs, and a court may properly decide these latter factors are more important than the need for stability. (See *LaMusga, supra*, 32 Cal.4th at p. 1093; *Burgess, supra*, 13 Cal.4th at p. 39.)

Mother contends the trial court was motivated solely to punish her for her past conduct, rather than to "judg[e] her ability to provide care for the children." Mother relies on the court's comments about her failure to be truthful regarding her marijuana test results. These comments do not show the trial court made its custody decision based on a desire to punish or reward either parent. The court's statements about Mother's lack of honesty reflected the court's concerns regarding the accuracy of Mother's assertions pertaining to her ability to coparent and properly care for the children. These concerns were an appropriate consideration in the overall best interests analysis.

13

Mother's arguments regarding legal principles applicable to a "[m]ove-away" case are unavailing. First, this matter was not a move-away case, which concerns a custodial parent's request for court approval to move with the child and/or a noncustodial parent's objection to such a move. The facts here involved two parents who lived apart, and the decision as to whether circumstances had substantially changed and which home would be the better for the boys' long term best interests. But even assuming the move-away legal principles applied, there was no abuse of discretion. Factors relevant to the best interest of the child in a move-away case include "the children's interest in stability and continuity in the custodial arrangement; the distance of the move; the age of the children; the children's relationship with both parents; the relationship between the parents including, but not limited to, their ability to communicate and cooperate effectively and their willingness to put the interests of the children above their individual interests; the wishes of the children if they are mature enough for such an inquiry to be appropriate; the reasons for the proposed move; and the extent to which the parents currently are sharing custody." (*LaMusga, supra*, 32 Cal.4th at p. 1101.) The record supports that the court considered each factor, and decided that on balance these factors weighed in favor of primary custody to Father.

We also find unhelpful Mother's argument that Father sought custody of the boys based on his "bad-faith motives" to avoid paying child support. Mother raised this issue at the hearing, and the court's comments and ruling show it rejected this argument. The court had a reasonable basis to do so given Father's assertions in his declaration and his statements under oath at the two hearings. The court further correctly noted that the issue before it concerned the children's best interests and not support payments.

14

In challenging the court's factual conclusion regarding the children's best interests, Mother essentially reasserts the same arguments she made to the family court in the proceedings below. In so doing, Mother ignores the governing standard of review. The issue before us is not whether this court would have reached the same conclusions as did the trial court. Instead, it is whether the record establishes the court, which was highly familiar with the history of the parties' custody dispute and had personally observed both parents and carefully reviewed the family court services recommendations, abused its discretion in reaching its own determinations on these issues. We find no abuse of discretion.

## DISPOSITION

Order affirmed. The parties to bear their own costs on appeal.

HALLER, J.

WE CONCUR:

BENKE, Acting P. J.

McINTYRE, J.